# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LOUIS LAMON,  | CASE NO. 1:09-cv-00205-LJO-SKO PC |
| Plaintiff, | ORDER PARTIALLY GRANTING MOTION TO COMPEL |
| v. | (Doc. 39) |
| DERRAL ADAMS, et al., | |
| Defendants. | |

Plaintiff Barry Louis Lamon ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On June 9, 2010, Plaintiff filed a motion to compel. (Doc. #39.) Defendants Adams, Junious, Callow, Lee, Ponce, Purvis, Baer, Valdez, and Bueno ("Defendants") filed an opposition to Plaintiff's motion to compel on June 28, 2010. (Doc. #41.) Plaintiff filed a reply to Defendants' opposition on July 14, 2010. (Doc. #42.)

**I.    Plaintiff's Claims**

This action proceeds on Plaintiff's February 2, 2009 complaint. Plaintiff claims that Defendants Baer, Valdez, and Buenos violated his Eighth Amendment rights by pummeling and pepper spraying Plaintiff in an unnecessary and excessive manner. Plaintiff also claims that Defendants Baer, Valdez, Buenos, Lee, Ponce, and Purvis violated his Eighth Amendment rights by housing Plaintiff with inmates that were known to be gang enemies. Plaintiff further claims that he was housed with known gang enemies in retaliation against Plaintiff's exercise of his First Amendment right to file grievances against the government. Finally, Plaintiff claims that supervisory Defendants Adams, Junious, Da Viaga, and Callow violated Plaintiff's Eighth

Amendment rights by failing to adequately respond to Plaintiff's administrative complaints, thereby exposing Plaintiff to a risk of further harm.

**II.     Discussion**

Plaintiff contends that he propounded two sets of document production requests, a set of interrogatories, and a set of requests for admissions on Defendants. Plaintiff argues that Defendant Adams is the only defendant who responded to the requests. Plaintiff further argues that Defendant Adams' responses were deficient.

The Court notes that there appears to be some confusion regarding to whom the discovery requests were sent and which of the individual defendants were to respond to them. Defendants noted that Plaintiff did not direct his document production requests to any particular defendant and, therefore, only one response was prepared on behalf of all the defendants. Plaintiff has not objected to this. Thus, there is no apparent dispute regarding who prepared the responses.

Defendants also note that the combined interrogatories and request for production of documents and the requests for admission appeared to be directed only to Defendant Adams and, therefore, none of the other defendants prepared a response to those requests. In his reply to Defendants' opposition, Plaintiff has not objected to the fact that the other defendants did not prepare a response. Accordingly, the Court will not direct any other defendants to prepare a response to Plaintiff's discovery requests.

**A.     Requests for Production of Documents, Set One**

Plaintiff argues that Defendant Adams' responses to items 1, 3, 4, 5, 6, 7, and 8 from Plaintiff's first set of document production requests were deficient.

**1.     Request for Production of Documents No. 1**

Plaintiff's Request for Production of Documents No. 1 states:

> Any and all grievances, complaints, or other documents received by the defendants or their agents at Corcoran concerning an allegation of unnecessary and/or excessive use of force on inmates by Defendants Adams, Junious, Callow, Lee, Ponce, Purvis, Baeri, Valdez, or Buenoes and any memoranda, investigative files, or other documents created in response to such documents, since June 21, 2003.

///

1  Defendant Adams' response states:

2  > Objection. Compound, overly broad, and burdensome. This request also seeks information which could invade other inmates' right to privacy. Additionally, this request seeks information protected by the attorney-client privilege and work product doctrine. Without waiving the objections, the responding party hereby produces: (1) Inmate Appeal Form (Log No. 08-3268), (2) Staff Complaint Response (Log No. 08-3268), and (3) Director's Level Appeal Decision (Log No. 08-3268).

7  Plaintiff argues that the documents sought are highly relevant to his claims. Plaintiff further argues that the documents do not contain information that would violate any inmate's privacy because Plaintiff is not seeking any personnel records, or any medical information.

10  Defendants contend that Plaintiff's request is overly broad because Plaintiff failed to sufficiently narrow his request. Defendants contend that "[t]here is simply no reason to believe that every grievance concerning the use of force by all nine defendants in this action within a 6-year time period is relevant to this action." (Defs. Adams, Junious, Callow, Lee, Ponce, Purvis, Baer, Valdez and Bueno's Opp'n to Pl. Lamon's Mot. to Compel 6:13-15, ECF No. 41)

15  Plaintiff is entitled to "obtain discovery regarding any non privileged matter that is relevant to any party's claim or defense." Federal Rule of Civil Procedure 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Federal Rule of Civil Procedure 26(b)(1). The Court finds that the discovery sought by Plaintiff is relevant to his claims. Although Federal Rule of Evidence 404 would normally prohibit Plaintiff from introducing evidence of prior use of excessive force incidents for the purpose of proving that Defendants used excessive force against Plaintiff, the grievances may be introduced for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Federal Rule of Evidence 404(b). The requested discovery may also lead to the discovery of other admissible evidence. Courts have permitted the discovery of prior administrative complaints or lawsuits when the previous complaints are sufficiently similar to the claims made in the complaint. See Cox v. McClellan, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) ("Prior civilian complaints made against the defendants and incidents of excessive force by individual defendants are clearly discoverable; Renshaw v. Ravert, 82 F.R.D. 361,

363 (E.D. Penn. 1979); Martinez v. Cornell Corrections of Texas, 229 F.R.D. 215, 223 (D.N.M. 2005). Finally, the Court notes that Plaintiff's claims against supervisory defendants are premised on his allegation that they were deliberately indifferent to a known risk to Plaintiff's safety. The grievance records may be admissible for the purpose of demonstrating that supervisory defendants were aware that the subordinate defendants had a history of using excessive force against inmates, and therefore posed a risk to Plaintiff's safety.

Defendants' main argument is that production of the requested documents would be extraordinarily burdensome. The scope of discovery may be limited if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Federal Rule of Civil Procedure 26(b)(2)(C)(iii).

Defendants note that because of the manner in which administrative grievances are maintained, locating the grievances that are responsive to Plaintiff's complaint "would require reviewing every inmate grievance of every inmate housed in the prison during [the] specified period of time and looking at each individual inmate grievance to determine whether any particular grievance involved the specified staff person." (Opp'n 5:14-17, ECF No. 41.) Defendants argue that "[t]he process is further complicated by the fact that many inmate grievances may refer to a particular event or issue but not identify the staff person, or all of the staff persons, involved." (Opp'n 5:17-19, ECF No. 41.)

Although the burden of retrieving the documents in question may be great, the documents requested are highly relevant to Plaintiff's claims. The Court also notes that there is no alternative source for Plaintiff to obtain the information he is seeking. Accordingly, the Court finds that Plaintiff's need for the documents outweighs the burden imposed on Defendant Adams.

Defendants argue that the documents requested invade the privacy rights of other inmates because the requests would identify inmates who are not related to this litigation. Defendants also contend that the grievances may contain "a great deal of intensely personal information about the inmates, such as what conditions necessitated the use of force and what, if any, medical harm they

1  suffered as a result of the employment of force." (Opp'n 7:14-16, ECF No. 41.)  Defendants claim
2  that redaction of the inmate names "is not a realistic option given LAMON'S reason for requesting
3  them" because "LAMON would not be able to determine defendants' response to each excessive use
4  of force allegation without questioning the inmate who wrote the grievance." (Opp'n 7:17-20, ECF
5  No. 41.)

6        The Court may limit the scope of discovery to protect the privacy interests of litigants and
7  third parties. <u>See</u> Federal Rule of Civil Procedure 26(c), <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S.
8  20, 34-35 (1984).  Plaintiff has not set forth any need for the names of the inmates who filed the
9  grievances, and any such need is outweighed by the inmate's privacy interests.  Although the names
10 of the inmates could prove useful to Plaintiff in order to identify potential witnesses, these witnesses
11 did not consent to having their identities disclosed to Plaintiff.  Plaintiff argues that these inmates
12 have no reasonable expectation of privacy in the information contained in grievances sent to prison
13 officials.  However, the Court finds that there is a reasonable expectation that such grievances will
14 not fall into the hands of the general inmate population and potential gang rivals.  Information
15 regarding an inmate's medical injuries or other activities in the prison may potentially be dangerous
16 in the hands of an enemy.

17       Defendants argue against redaction of the names, but the arguments against redaction are not
18 persuasive.  Defendants contend that Plaintiff could not determine Defendants' response to the
19 incidents unless he first questions the inmate who wrote the grievance.  However, Plaintiff could
20 determine the prison officials' response to each use of force allegation by questioning Defendants
21 directly and referencing the particular incident by the appeal log number.  Accordingly, the Court
22 will order the names of the inmates associated with the documents to be redacted before they are
23 provided to Plaintiff.

24       Finally, Defendants argue that the documents requested are protected by the attorney-client
25 privilege.  Defendants claim that some of the documents requested may have been "made in
26 confidence in order to obtain legal advice." (Opp'n 8:7-9, ECF No. 41.)  Defendants also argue that
27 some documents may have been prepared by attorneys for Defendants in anticipation of litigation.
28       "When a party withholds information otherwise discoverable by claiming that the

information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Federal Rule of Civil Procedure 26(b)(5)(A).  The Court notes that the vast majority of the documents at issue are grievances written by inmates.  The responses to those grievances were directed toward the inmate authors, rebutting any contention that the information was made in confidence and should be regarded as privileged.

Defendants have failed to produce a privilege log that describes any other documents with enough specificity that would allow Plaintiff to challenge whether they are truly privileged. Accordingly, Defendants will be ordered to produce the documents requested.  If Defendants withhold any documents because they are privileged, they must produce a privilege log that specifically identifies each document withheld.

**2.     Request for Production of Documents No. 3**

Plaintiff's Request for Production of Documents No. 3 states:

> Any and all policies, directives, or instructions to staff at Corcoran concerning the use of tear gas or other chemical weapon on inmates.

Defendant Adams' response states:

> Responding party hereby produces Title 15, Crime Prevention and Corrections section 3268, 3268.1 and 3277.

Plaintiff complains that the response was insufficient because the documents produced were not responsive to the request.  Plaintiff contends that he requested the operational procedures "created by the warden of Corcoran to effectualize the rules of the director as canonized in the Title 15, such as those provided by defendants in response to this request." (Pl.'s Mot. to Compel Discovery 5:22-25, ECF No. 39.) In their opposition, Defendants state that the documents identified in Plaintiff's motion are not the same as the documents originally requested.  Defendants state that they have supplemented their response by producing "Operational Procedure No. 1053, Oleoresin Capsicum Contraindications." (Opp'n 9:3-5, ECF No. 41.)  Plaintiff has not provided any further

1  arguments with respect to Request for Production of Documents No. 3. Accordingly, the Court finds
2  that the response is sufficient.

3 **3.   Request for Production of Documents No. 4 and 5**

4  Plaintiff's Request for Production of Documents No. 4 states:

> Any logs, lists, or other documentation reflecting the use of force on Corcoran Security Housing Unit (SHU) inmates by Corcoran staff, from June 31, 2003 to the date of your response.

Defendant Adams' response states:

> Objection. Overly broad, burdensome, harassing and vague and not likely to lead to the discovery of admissible evidence. There are approximately 200 to 400 use of force incidents a year at Corcoran. This request would require hundreds of man hours for someone to compile all of the use of force records over the last six years, which makes this request for information extremely burdensome and harassing. This request also seeks information which could invade other inmates' right to privacy. In addition, as phrased, this request seeks information protected by the attorney-client and work product privilege doctrine. Without waiving the objections, responding party hereby produces: (1) Inmate Appeal Form (Log No. 08-3268), (2) Staff Complaint Response (Log No. 08-3268), (3) Director's Level Appeal Decision (Log No. 08-3268); (4) Mental Health Referral Chrono signed by Baer on June 8, 2008; (5) Rules Violation Report (Log No. 4A4-08-06-16).

Plaintiff's Request for Production of Documents No. 5 states:

> Any logs, lists or other documents reflecting grievances filed by Corcoran SHU inmates concerning them being subjected to unnecessary or excessive force by Corcoran staff, from June 31, 2003 until the date of your response.

Defendant Adams' response states:

> Objection. Overly broad, burdensome, and harassing. Inmate grievances are kept by inmate name only, and they are only kept for two years. In addition, it would take hundreds hours[sic] to review each inmate grievance over the last two years to determine if it involved a claim of unnecessary or excessive force by Corcoran staff. This request also seeks information which could invade other inmates' right to privacy. Without waiving the objections, responding party hereby produces: (1) Inmate Appeal Form (Log No. 08-3268), (2) Staff Complaint Response (Log No. 08-3268), and (3) Director's Level Appeal Decision (Log No. 08-3268).

The documents requested by Plaintiff are similar to the documents requested in Request for Production of Documents No. 1. However, Request Nos. 4 and 5 are more expansive than Request

7

No. 1 because they request documents related to the use of force by prison staff who are not defendants in this action. Although Plaintiff narrows his request somewhat by only requesting documents related to use of force incidents in the SHU, the request would still encompass documents related to the use of force that did not involve any of the defendants in this action. While documents related to the use of force by the defendants in this action would be highly relevant to Plaintiff's case, see discussion supra Part I.A.1, documents related to the use of force by correctional officers who are not parties to this litigation are significantly less relevant to Plaintiff's case. Defendants also note that Request No. 4 would encompass documents related to use of force incidents where the inmate did not claim that the use of force was excessive.

Plaintiff argues that the requested documents are relevant to this action because they will establish that there is a prison-wide "shadow policy" for retaliating against litigious inmates. However, the factual issue relevant to this action is whether the defendants in this action retaliated against Plaintiff. Evidence that shows that other correctional officers retaliated against prisoners has little probative value with respect to proving the necessary elements of Plaintiff's claims.

The Court will limit the request to only encompass the types of documents that were requested in Plaintiff's Request for Production of Documents No. 1. To the extent that Requests Nos. 4 and 5 cover a more expansive set of documents than Request No. 1, the Court finds that these documents are not likely to lead to the discovery of admissible evidence. Further, the remote possibility that these documents may lead to the discovery of admissible evidence is outweighed by the burden imposed on Defendants in producing them. The Court will deny Plaintiff's motion to compel with respect to Request Nos. 4 and 5 to the extent that they request documents beyond the scope of what was requested in Request No. 1.

### 4. Request for Production of Documents No. 6

Plaintiff's Request for Production of Documents No. 6 states:

> A copy of the video-recording created by defendants and depicting their June 7, 2008, use of force on me.

Defendant Adams' response states:

> Responding party has no documents responsive to this request.

1    Plaintiff claims that Defendant Adams' response is insufficient and deceitful. Plaintiff claims
2 that prison regulations require all cell extractions to be video taped. Defendants claim that no video
3 tape exists, regardless of whether prison regulations mandate their existence. The Court will accept
4 Defendants' response. Plaintiff is advised that if it is later proven that Defendants improperly
5 withheld the video tape from disclosure, Defendants will be sanctioned.

6    **5.   Request for Production of Documents No. 7**

7    Plaintiff's Request for Production of Documents No. 7 states:

> Any and all documents created by any CDCR and/or Corcoran staff member from June 7, 2008 to the date of your response, concerning the plaintiff's staff complaint log No. 08-3268, and 08-3746, and not included in requests No. 1-6 of this request.

11   Defendant Adams' response states:

> Objection. Overly broad and vague. The request also seeks information protected by the attorney-client privilege and work product doctrine. Without waiving the objections, responding party hereby produces Second Level Appeal Response (Log No. 08-03746), Screening at the First Level, and Director's Level Appeal Decision (Log No. 08-03746).

16   There is no dispute regarding the relevance of the requested documents. Instead, Defendants
17 argue that the request is overly broad because it may include documents "purely for processing
18 inmate complaints, and investigation documents which are confidential to inmates. The request also
19 includes all documentation between defendants and their counsel." (Opp'n 12:13-15, ECF No. 41.)

20   The Court will overrule Defendants' objection regarding the breadth of the request. The
21 Court finds that the documents created by CDCR in response to Plaintiff's administrative complaints
22 are reasonably likely to lead to the discovery of admissible evidence.

23   Defendants may withhold documents that are protected by the attorney-client privilege.
24 However, to the extent that Defendants withhold any such documents, they must produce a privilege
25 log that describes each document withheld with enough specificity so as to allow Plaintiff and the
26 Court to determine whether the claim of privilege has merit. The Court rejects Defendants'
27 argument the request itself is flawed because "LAMON failed to distinguish between confidential
28 communications between defendants and their counsel, documents made in anticipation of litigation,

and documents that would reveal counsel's opinions regarding this action." (Opp'n 12:16-19, ECF No. 41.) Plaintiff is not obligated to frame his request in a manner that explicitly distinguishes privileged documents from the documents that must be produced. The Court will order Defendant Adams to provide a further response to Plaintiff's request.

### 7.     Request for Production of Documents No. 8

Plaintiff's Request for Production of Documents No. 8 states:

> The Plaintiff's Complete Segregation 114-A, 2nd Unit 114-B Logs, from February 26, 2006 through June 7, 2008.

Defendant's response states:

> Responding party hereby produces plaintiff's Inmate Segregation Records and Offender History print-out.

Defendant's also issued a supplemental response which states:

> Responding party hereby produces redacted copies of plaintiff's Unit 114-B Logs from February 2006 through June 2008. The Copies have been redacted to protect the privacy of other inmates.

Plaintiff complains that Defendant Adams provided Plaintiff with more than 200 pages of meaningless paper. Plaintiff argues that the response was "absurd" because the documents redacted everything except Plaintiff's name. Plaintiff further states that the redacted documents provided were the sign-in and sign-out logs for all inmate and staff movements in and out of a unit, and indicated where the person was going.

Defendants argue that Plaintiff has failed to establish the need for unredacted information regarding the movement of the other inmates and staff. In his reply, Plaintiff notes that he could use the information to establish the fact that Plaintiff was housed with particular individuals who were members of rival gangs and posed a threat to Plaintiff's safety. Plaintiff also argues that the logs could provide Plaintiff with names of potential witnesses.

Defendants have failed to provide the Court with specific arguments as to why the inmates' privacy rights in the information contained in the logs outweigh Plaintiff's need for the information contained in the logs. The information contained in the logs appears to be limited to information regarding the comings and goings of the inmates and staff in Plaintiff's housing unit. Defendants

fail to identify any specific information in the logs that could be regarded as "private." Further, Defendants fail to set forth any argument that suggests that the disclosure of the information in the logs would pose a threat to institutional security. Accordingly, the Court will require Defendant Adams to supplement his response with copies of the unredacted logs.

### B. Requests for Admission

Plaintiff argues that Defendant Adams' responses to items 9, 12, and 14 from Plaintiff's requests for admissions were deficient.

#### 1. Request for Admission No. 9

Plaintiff's Request for Admission No. 9 states:

> Since gassing c/o D. Fierro on February 25, 2006, Plaintiff had been maintained exclusively in lower-tier cells with solid-slab doors until defendants Baer, Buenos, Valdez, Lee, and Ponce and Purvis housed him in Cell 4A4L-64 following their June 7, 2008 use of force on him.

Defendant Adams' response states:

> Objection. This request assumes facts not into evidence that defendants Baer, Bueno, Valdez, Lee, and Ponce were responsible for housing plaintiff in cell 4A4L-64. Without waiving the objection, answering party responds as follows: Admit that since February 25, 2006 plaintiff has been housed in lower-tier cells with solid-slab doors until June 7, 2008, except for brief hospital stays.

Plaintiff contends that Defendant's response was inaccurate because Plaintiff has only stayed in cells with solid-slab doors. Based on Plaintiff's arguments, it appears that Plaintiff is asking Defendant Adams to admit that every cell that Plaintiff has stayed in between February 25, 2006, and June 7, 2,008 had a solid-slab door and was located in a lower tier. The main focus of the request for admission is unclear because it is not clear how the type of cell door or the tier level is relevant to Plaintiff's claims. Defendant Adams' response admits that Plaintiff was housed in lower-tier cells with solid-slab doors, but qualifies the admission by acknowledging that Plaintiff has stayed in other cells outside the normal housing units. Adams did not describe the conditions of the cells outside the housing unit.

The Court will direct Defendant Adams to provide a further response that admits or denies whether Plaintiff's cells outside the housing unit (specifically, Plaintiff's cells during hospital stays)

11

were in lower tiers and had solid-slab doors.

**2.  Request for Admission No. 12**

Plaintiff's Request for Admission No. 12 states:

> When the Plaintiff was moved to cell 4A4L-64 on June 7, 2008, Plaintiff's cellmate was allowed to remain in cell 4A4R-06.

Defendant Adams' response states:

> Answering party lacks the knowledge and information to either admit or deny the truth of this statement.

Defendant Adams indicated that he will request information regarding Plaintiff's cellmate and will provide a supplemental response to the request for admission. Plaintiff has not indicated that he is dissatisfied with Defendant Adams' response. The Court will not compel Defendant Adams to take any other action.

**3.  Request for Admission No. 14**

Plaintiff's Request for Admission No. 14 states:

> Plaintiff's cellmate who was allowed to remain in cell 4A4R-06 on June 7, 2008, was not a "gasser" and did not have any other case factors that required the defendants to leave him in cell 4A4R-06.

Defendant Adams' response states:

> Objection. Compound. This request also seeks information which could invade plaintiff's cellmate's right to privacy. Additionally, this request seeks information not likely to lead to the discovery of admissible evidence. Without waiving these objections, answering party lacks sufficient information or knowledge to allow him to either admit or deny this request.

On its face, it is unclear how Plaintiff's request is relevant. In his motion, Plaintiff states that the request is relevant to establish that Plaintiff's transfer was not related to any legitimate penological goal. Plaintiff does not explain what a "gasser" is and the terminology is unfamiliar to the Court.

The Court finds that the request may be relevant in establishing whether the defendants had a legitimate penological justification for transferring Plaintiff to a different cell. Plaintiff seeks to establish that Plaintiff's cell transfer was retaliatory because Defendants could have transferred

Plaintiff's cellmate, and not Plaintiff, to a different cell. Plaintiff alleged in his complaint that the cell to which he was transferred was somehow less accommodating to Plaintiff because it was on the second tier and had a perforated door. Plaintiff further alleged that Defendants could have transferred Plaintiff's cellmate to the less desirable cell.

Defendants contend that admitting or denying Plaintiff's request would invade Plaintiff's cellmate's privacy rights because it would require Defendants to disclose sensitive personal or medical information about Plaintiff's cellmate. However, to the extent that Defendants deny Plaintiff's request, Defendants need only note that there exist "case factors" or other legitimate penological purposes for keeping Plaintiff's cellmate in 4A4R-06 rather than transferring him to the cell where Plaintiff was transferred. Defendants' denial does not have to exhaustively describe the reasons why Plaintiff's cellmate was not transferred.

Accordingly, the Court will direct Defendant Adams to admit or deny that there was no legitimate penological reason for requiring Plaintiff's cellmate to remain in cell 4A4R-06 while Plaintiff was moved to another cell.

### III. Conclusion and Order

The Court will direct Defendant Adams to provide a further response to Request for Production of Documents Nos. 1, 7 and 8 and Request for Admission Nos. 9 and 14. Defendant Adams' supplemental responses shall be due within thirty (30) days of the date of service of this order.

Accordingly, it is HEREBY ORDERED that within thirty (30) days of the date of service of this order, Defendant Adams shall serve supplemental responses to Request for Production of Documents Nos. 1, 7 and 8 and Request for Admission Nos. 9 and 14 in the manner described in this order.

IT IS SO ORDERED.

**Dated:   November 1, 2010**               /s/ Sheila K. Oberto
                                          UNITED STATES MAGISTRATE JUDGE