# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LOUIS LAMON, | CASE NO. 1:09-cv-00205-LJO-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| DERRAL ADAMS, et al., | (Doc. 46) |
| Defendants. | and |
| | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF BE DENIED |
| | (Doc. 78) |
| | and |
| | ORDER REQUIRING PLAINTIFF TO SUBMIT SUPPLEMENTAL OPPOSITION WITHIN 30 DAYS |
| | OBJECTIONS DUE WITHIN 30 DAYS |
| _____/ | |

Plaintiff Barry Louis Lamon ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On September 7, 2010, Defendants filed a motion for summary judgment. (Doc. #46.) Plaintiff filed an opposition on January 4, 2011. (Docs. #68-71.) Defendants filed a reply on January 7, 2011. (Doc. #72.) For the reasons set forth below, the Court recommends that Defendants' motion for summary judgment be denied with respect to Plaintiff's excessive force claims against Defendants Baer, Valdez, Bueno, Lee, Ponce,

or Purvis and Defendants' claim to qualified immunity be denied with respect to Defendants Adams, Junious, and Callow.

Plaintiff argued that he was unable to submit certain evidence in support of his opposition. On January 19, 2011, Plaintiff filed a motion requesting an "order of protection" requiring prison officials to provide Plaintiff with photocopies of 233 pages of documents. The Court will construe Plaintiff's request as a motion for preliminary injunction and recommend that Plaintiff's request for preliminary injunctive relief be denied. However, the Court will provide Plaintiff an opportunity to submit a supplemental opposition and will defer ruling on the remaining arguments raised in Defendants' motion for summary judgment until after Plaintiff submits a supplemental opposition.

## I.    **Background**

### A.    **Plaintiff's Claims**

This action proceeds on Plaintiff's February 2, 2009, complaint. (Doc. #1.) Plaintiff alleges that prison staff retaliated against him for filing inmate grievances and staff complaints. (Compl. ¶26.) Plaintiff alleges that supervisory Defendants (Adams, Junious, Da Viaga, and Callow) "failed to take adequate remedial action to stop the . . . acts of retaliation from occurring and instead created policies for review of inmate grievances that implicitly condoned, authorized, and perpetuated [the] retaliation." (Compl. ¶ 26.) Defendants Adams, Junious, Da Viaga, and Callow "buried" allegations of staff abuse and misconduct under the doctrine of confidentiality. (Compl. ¶ 27.)

Plaintiff made numerous written and verbal complaints about prison staff retaliating against him by tainting his meals with chemicals. (Compl. ¶ 28.) Plaintiff's complaints would be treated as staff complaints and the results of purported investigations were kept confidential. (Compl. ¶ 29.) Ultimately, the food tainting did not cease, and in fact amplified after Plaintiff filed grievances. (Compl. ¶ 29.)

On May 2, 2008, Plaintiff was ordered to appear in federal court to give testimony in one of his civil lawsuits against prison officials at CSP-Corcoran. (Compl. ¶ 30.) Plaintiff alleges that prison staff in the kitchen amplified their retaliatory practices because he was testifying in court. (Compl. ¶ 31.) Plaintiff's tainted meals were delivered by Defendants Lee, Ponce, and Purvis. (Compl. ¶ 31.) Plaintiff complained to Defendants Lee, Ponce, and Purvis, but was told to write a

grievance against the staff that made his meals. (Compl. ¶ 32.) Plaintiff alleges that any complaints he would have made would have been buried pursuant to the "shadow-policy" perpetuated by Defendants Adams, Junious, Da Viaga, and Callow to cover-up Plaintiff's complaints under the guise of "confidentiality". (Compl. ¶ 33.)

On June 7, 2008, Plaintiff's meal was delivered by Defendants Lee, Ponce, and Purious in an inedible condition. (Compl. ¶ 34.) Plaintiff's demand that Defendants Lee, Ponce, and Purious inspect the meal was refused. (Compl. ¶ 34.) Later in the evening, Plaintiff refused to accept his medication from the nurse as a gimmick to force her to contact Defendants Valdez and Buenos. (Compl. ¶ 35.) Defendants Valdez, Buenos, and Baer arrived and informed Plaintiff that they were aware that Plaintiff was only refusing medication as a means of obtaining their attention. (Compl. ¶ 36.) Plaintiff was ordered to cuff up and take his medications. (Compl. ¶ 36.) Plaintiff submitted to handcuffs. (Compl. ¶ 37.) Plaintiff learned that he was going to be escorted to the Acute Care Hospital to receive his drugs intravenously which Plaintiff believed to be a trick to move Plaintiff to another cell. (Compl. ¶ 37-38.) Plaintiff protested by laying on the ground in a prone position and told Defendants that he wanted to take the drugs orally. (Compl. ¶ 38.) Defendants Baer, Valdez, and Buenos ordered Plaintiff to go to the hospital. (Compl. ¶ 39.) Plaintiff refused and Defendant Valdez ordered Plaintiff to stand and sit in a wheelchair. (Compl. ¶ 40.) When Plaintiff refused again, Defendants Valdez, Lee, Ponce, Purvis, Baer and Buenos piled on Plaintiff's back, pummeled him and pepper sprayed him. (Compl. ¶ 40-41.) Plaintiff complains that the use of force was unnecessary because the Defendants could have simply lifted Plaintiff and placed him into an electric cart for transportation to the hospital. (Compl. ¶ 42.)

After Plaintiff was taken to the hospital and provided his medications, Defendants Baer, Valdez, and Buenos ordered Defendants Lee, Ponce, and Purvis to place Plaintiff in building 4A4L. (Compl. ¶ 44.) Plaintiff alleges that he was placed in building 4A4L because he had gang enemies there and Defendants intentionally endangered Plaintiff's safety. (Compl. ¶ 46-47.)

After Plaintiff was moved to his new cell, he was denied all access to his personal property. (Compl. ¶ 48.) Plaintiff's property was returned after four days, but he was still missing some legal materials, medical records, toiletries, and stamps. (Compl. ¶ 48.) Plaintiff complained about his

1    stolen property but claims that his complaints were suppressed and covered-up. (Compl. ¶ 49.)

2    Plaintiff alleges that Defendant Callow falsified facts regarding the investigation of his complaints.

3    (Compl. ¶ 49-50.)

4          Plaintiff finally claims that Defendants Baer, Valdez, and Buenos ordered that Plaintiff be

5    placed on strip-cell status. (Compl. ¶ 51.) Plaintiff was placed in a cell with nothing but a pair of

6    shorts, forced to sleep on a concrete slab, and denied toiletries for three days. (Compl. ¶ 51.)

7    Plaintiff alleges that his placement on strip-cell status was for retaliatory purposes. (Compl. ¶ 51-

8    52.)

9          On June 17, 2009, the Court screened Plaintiff's complaint. (Doc. #7.) The Court found that

10   Plaintiff's complaint stated some cognizable claims. The Court found that Plaintiff stated cognizable

11   claims against Defendants Baer, Valdez, Buenos, Lee, Ponce, and Purvis for the use of excessive

12   force and deliberate indifference to a threat to Plaintiff's safety in violation of the Eighth

13   Amendment, and retaliation against Plaintiff's exercise of his First Amendment rights. The Court

14   also found that Plaintiff stated cognizable claims against Defendants Adams, Junious, Da Viaga, and

15   Callow for deliberate indifference to a threat to Plaintiff's safety in violation of the Eighth

16   Amendment. All other federal claims raised in Plaintiff's complaint were dismissed on July 31,

17   2009, after Plaintiff notified the Court that he wished to proceed only on the claims found to be

18   cognizable in the June 17, 2009 screening order.[1]

19         **B.    Defendants' Motion for Summary Judgment**

20         Defendants contend that they are entitled to judgment on four separate grounds. First,

21   Defendants argue that Plaintiff failed to timely respond to Defendants' requests for admissions and

22   the failure to respond operates as an automatic admission of the facts contained in the requests

23   pursuant to Federal Rule of Civil Procedure 36(a)(3). Defendants argue that if the facts are deemed

24   admitted, they are entitled to judgment.

25         Second, Defendants contend that Plaintiff failed to comply with the Government Claims Act

26

27         [1] Plaintiff's complaint also raised claims under state law. However, the Court "defer[red] addressing the
     sufficiency of Plaintiff's state law claims until this action reaches a point when it is clear that the exercise of
28   supplemental jurisdiction over Plaintiff's state law claims is appropriate." (Order Requiring Pl. Either to File Am.
     Compl. or to Notify Court of Willingness to Proceed Only on Claims Found to be Cognizable 1 n.1, ECF No. 7.)

with respect to his state law claims.  Defendants argue that they are entitled to dismissal with respect to the state law claims because Plaintiff failed to plead compliance with the California Government Claims Act.

Third, Defendants contend that they are entitled to judgment because Plaintiff has no evidence that Defendants Baer, Valdez, Bueno, Lee, Ponce, or Purvis used excessive force against Plaintiff or retaliated against Plaintiff, or that Defendants Adams, Junious, or Callow were deliberately indifferent toward a threat to Plaintiff's safety or promulgated a policy directing subordinates to retaliate against Plaintiff.

Finally, Defendants contend that Defendants Adams, Junious, and Callow are entitled to qualified immunity.

## II.    Summary Judgment Legal Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Federal Rule of Civil Procedure 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.   "A moving party without the ultimate burden of persuasion at trial-usually, but not always, a defendant-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment."  Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Federal Rule of Civil Procedure 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. at 248 (1986) ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Federal Rule of Civil Procedure 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show

1 that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole

2 could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

3 trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

4 **III.   Discussion**

5     **A.   Defendants' Requests for Admissions**

6       Defendants argue that Plaintiff's failure to respond to requests for admissions results in

7 automatic admission of the matters contained therein.  Defendants contend that Plaintiff never

8 responded to requests for admission propounded by Adams, Junious, Callow, Lee, Ponce, Purvis,

9 Baer, Bueno, and Valdez.  Defendants argue that the matters that should be deemed admitted

10 establish that Defendants did not violate any of Plaintiff's constitutional rights.

11       Plaintiff opposition states:

> 12    Defendants falsely claim that Plaintiff failed to provide them with
> 13 responses to Defendant Adams' request for admissions.  This is a
> baseless and perjurious[sic] charge.  Like so much more of the
> Defendant's claims.  I filed the responses at mention eons ago.  Just
> 14 to prove the point with resounding finality, I am sending the Court the
> "original document" so that the Court can take notice of age and wear
> 15 on the thing.
> Interestingly enough, the Defendants have not mentioned this matter
> 16 during any of the latest discovery disputes.  That goes to show they
> are perjuring themselves in a hail-mary effort to squeak their clients
> 17 out of this iron-clad civil suit.
> Furthermore, your honor, please look at all of the stuff they now say
> 18 they didn't receive.  Remember, I sent a copy for each Defendant of
> each response.  There is no reasonable explanation they can give for
> 19 not having noticed something this expansive sooner.  This is a sham.

20 (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. and/cross-motion for Summ. J. 4:3-17,

21 ECF No. 70.) The Court has not received Plaintiff's responses to Defendants' requests for admission

22 and has not received any documentary evidence to support Plaintiff's claim that he responded to

23 Defendants' requests for admission.

24       Although Plaintiff has provided scant evidence in support of his contention that he filed

25 timely responses to Defendants' requests, the Court will not award judgment in Defendants' favor

26 based on Rule 36(a)(3).  Rule 36(b) provides as follows:

27 ///

28 ///

1
2
3
4

> [a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of this action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

5  Federal Rule of Civil Procedure 36(b).  The Court may "exercise its discretion to grant relief from
6  an admission made under Rule 36(a) only when (1) the presentation of the merits of the action will
7  be subserved, and (2) the party who obtained the admission fails to satisfy the court that withdrawal
8  or amendment will prejudice that party in maintaining the action or defense on the merits." Conlon
9  v. U.S., 474 F.3d 616, 621 (9th Cir. 2007) (internal citations and quotations omitted).  "Admissions
10 are sought, first, to facilitate proof with respect to issues that cannot be eliminated from the case and,
11 second, to narrow the issues by eliminating those that can be."  Id. at 622 (citing McLaughlin v.
12 Richland Shoe Co., 486 U.S. 128, 133-34 (1988)).  "The rule is not to be used in an effort to 'harass
13 the other side' or in the hope that a party's adversary will simply concede essential elements."  Id.
14 (quoting Perez v. Miami-Dade County, 297 F.3d 1255, 1268 (11th Cir. 2002)).

15       The factors set forth above weigh in favor of granting relief under Rule 36(b).  The
16 presentation of the merits of this action would be subserved if Defendants were allowed to prevail
17 based on the matters deemed to be admitted under Rule 36.  Defendants' requests for admissions ask
18 Plaintiff to admit that Defendants did not use excessive force against him, or that Defendants were
19 not deliberately indifferent toward threats to Plaintiff's safety, or that Defendants did not retaliate
20 against Plaintiff for exercising his First Amendment rights.  Defendants request that Plaintiff admit
21 to matters that would contradict allegations explicitly made in his complaint.  The requests for
22 admissions do not appear to have been propounded to narrow the issues or to facilitate proof with
23 respect to issues that cannot be eliminated from the case.  It appears instead that Defendants
24 propounded the requests hoping Plaintiff would concede essential elements by failing to file timely
25 responses.  It would be difficult for Defendants to contend that they suffered prejudice because
26 Plaintiff failed to respond to requests asking him to admit that the allegations in his complaint were
27 untrue.
28 ///

1    Accordingly, judgment should not be awarded in Defendants' favor because any admission

2    under Rule 36(a)(3) should be withdrawn pursuant to Rule 36(b).  The Court will recommend that

3    Defendants' motion for summary judgment be denied to the extent that it relies on matters that

4    Defendants contend are admitted pursuant to Rule 36(a)(3).  The Court will further recommend that

5    Plaintiff be ordered to re-serve his responses to the requests for admissions on Defendants.

6    **B.**    **California Government Claims Act**

7    Defendant argues that Plaintiff's state law claims are barred because Plaintiff failed to

8    comply with the California Tort Claims Act.  California Government Code Section 945.4 provides

9    that:

10       no suit for money or damages may be brought against a public entity
         on a cause of action for which a claim is required to be presented in
11       accordance with Chapter 1 (commencing with Section 900) and
         Chapter 2 (commencing with Section 910) of Part 3 of this division
12       until a written claim therefor has been presented to the public entity
         and has been acted upon by the board, or has been deemed to have
13       been rejected by the board. . . .[2]

14   Cal. Govt. Code § 945.4.  Section 905.2 requires all claims for money or damages against the state

15   "for an injury for which the state is liable" to be filed with the California Victim Compensation and

16   Government Claims Board.  Cal. Govt. Code § 950.2.  Section 910 requires a CTCA claim to state

17   the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim

18   asserted," "[a] general description of the indebtedness, obligation, injury, damage or loss incurred

19   so far as it may be known at the time of presentation of the claim," and "[t]he name or names of the

20   public employee or employees causing the injury, damage, or loss, if known."  Cal. Govt. Code §

21   910.

22       The purpose of the CTCA is "'to provide the public entity sufficient information to enable

23   it to adequately investigate claims and to settle them, if appropriate, without the expense of

24   litigation.'"  Phillips v. Desert Hospital Dist., 49 Cal. 3d. 699, 705 (1989) (quoting City of San Jose

25   v. Superior Court, 12 Cal. 3d 447, 455 (1974)).  A CTCA claim is sufficient if there is some

26

27       [2]California Government Code Section 950.2 extends this requirement to "public employees or former public

28   employees for injury resulting from an act or omission in the scope of his employment as a public employee."  Cal.
     Govt. Code § 950.2.

9

compliance with all the statutory requirements and the claim discloses sufficient information to enable the public entity to investigate the merits of the claim so as to settle the claim, if appropriate. City of San Jose, 12 Cal. 3d at 456-57.

Defendants argue that they are entitled to dismissal because Plaintiff failed to plead compliance with the California Tort Claims Act. Plaintiff argues that pleading compliance is unnecessary because compliance is an affirmative defense which Defendants have the burden of asserting and proving.

Plaintiff argues that "failure to exhaust is an affirmative defense. Plaintiff is not required to plead or prove it." Plaintiff cites to Jones v. Bock, 549 U.S. 199 (2007) and Wyatt v. Terhune, 315 F.3d 1108, (9th Cir. 2003) in support of his argument. Jones and Wyatt held that prisoners do not have to plead and demonstrate exhaustion in their complaint to comply with the Prison Litigation Reform Act's ("PLRA") exhaustion requirement. Jones, 549 U.S. at 216 ("failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints"); Wyatt, 315 F.3d at 1119 ("nonexhaustion under § 1997e(a) of the PLRA does not impose a pleading requirement . . . defendants have the burden of raising and proving the absence of exhaustion").

The Court notes that Defendants are not raising an exhaustion defense under Section 1997e(a) of the PLRA. Defendants instead contend that Plaintiff failed to comply with the claims presentation requirements of the California Tort Claims Act, a separate statutory scheme with separate requirements from the PLRA.

Pursuant to California law, "a plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement [of the California Tort Claims Act]. Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action." State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1243 (2004). "The timely filing of a claim is an essential element of a cause of action against a public entity and failure to allege compliance with the claims statute renders the complaint subject to general demurrer. . . . Since compliance with the claims statute is an element of plaintiff's cause of action, failure to comply is not an affirmative defense. Therefore, a defendant need not plead lack of compliance with the claims

statute." <u>Wood v. Riverside General Hospital</u>, 25 Cal. App. 4th 1113, 1119 (1994) (internal citations omitted).  The Ninth Circuit has acknowledged the pleading requirement of the California Tort Claims Act.  <u>Mangold v. California Public Utilities Com'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995) ("'Where compliance with the Tort Claims Act is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to general demurrer.'") (quoting <u>Snipes v. Bakersfield</u>, 145 Cal. App. 3d 861, 865 (1983)).

Plaintiff's complaint alleges that he complied with the PLRA by exhausting his administrative remedies.  However, the complaint contains no mention of compliance with the California Tort Claims Act or the filing of any claims with the government claims board. Defendants argue that Plaintiff admitted that he failed to file a claim with the Victim's Compensation Board for his state claims against defendants.  The relevant portion of Plaintiff's deposition states:

> And I took it to the Victim's Compensation Board.  The Victim's Compensation saying that if they responded saying that they changed the procedure.  There was times, you know, I am old school with it. There was a time when if you file a 602, there may be some compensation for whoever gets hired that day, ordered that as part of your Complaint if you attach this order Complaint control with it. But they said those rules changed I think in 2004 or 2005 or something.  And you – you literally have to file a separate board of control Complaint in addition to your CDC grievance.  They said that those are two different entities, and they don't honor the CDC appeals, and pursuant to hearing their rules, I failed to file with them within six months.  But what they would do since prison has already admitted that the defendants were wrong, because they would contact the prison and see if they would be willing to waive the six months requirement issue so they could deal with it.  I told them, no.  So I said okay, fine.  I am going to take your ass to federal court and now you got to pay the federal fees.

(Decl. of Lakeysia R. Beene in Supp. of Defs.' Mot. for Summ. J. Ex. A, at 46:4-26, ECF No. 47.) Based on his deposition testimony, Plaintiff was aware that the California Department of Corrections and Rehabilitation's ("CDCR") grievances process and the California Victim's Compensation Board claims process were two different processes and that he was required to file a separate claim with the board in addition to his CDCR grievance.  Plaintiff's claim was filed in an untimely manner and Plaintiff did not ascertain whether the department would waive the timeliness issue because Plaintiff wanted to take "[their] ass to federal court."

Under California law, compliance with the California Tort Claims Act is treated as an element of any cause of action subject to the claims presentation requirements of the California Tort Claims Act. Since compliance is an element of Plaintiff's state law claims and Plaintiff has failed to allege such compliance, Plaintiff's state law claims must be dismissed for failing to state a claim. Accordingly, the Court will recommend that Plaintiff's state law claims be dismissed.

**C.  Sufficiency of Plaintiff's Evidence**

**1.  Excessive Force Claims Against Defendants Baer, Valdez, Bueno, Lee, Ponce, and Purvis**

Defendants argue that there is no evidence that Defendants Baer, Valdez, Bueno, Lee, Ponce, or Purvis used excessive force against Plaintiff and these defendants are therefore entitled to judgment on Plaintiff's excessive force claims. Defendants argue that any use of force was justified because Plaintiff refused to obey orders, refused to go to the hospital, and posed a threat of harm to the officers.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective "sufficiently culpable state of mind" requirement is met when a prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference

///

1  could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

2  Id.

3      Where prison officials are accused of using excessive physical force, the issue is "'whether

4  force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

5  sadistically to cause harm.'" Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers,

6  475 U.S. 312, 320-321 (1986)).   Factors relevant to the analysis are the need for the application of

7  force, the relationship between the need and the amount of force that was used and the extent of the

8  injury inflicted. Whitley, 475 U.S. at 321.   Other factors to be considered are the extent of the threat

9  to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis

10  of the facts known to them, and any efforts made to temper the severity of a forceful response.  Id.

11  The infliction of pain in the course of a prison security measure "does not amount to cruel and

12  unusual punishment simply because it may appear in retrospect that the degree of force authorized

13  or applied was unreasonable, and hence unnecessary."  Id. at 319.   Prison administrators "should be

14  accorded wide-ranging deference in the adoption and execution of policies and practices that in their

15  judgment are needed to preserve internal order and discipline and to maintain institutional security."

16  Id. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

17      Defendants argue that Plaintiff admitted he was repeatedly asked to stand up and get into the

18  wheelchair. Defendants further argue that Plaintiff was warned that the failure to comply with orders

19  would result in getting pepper sprayed. Plaintiff continued to refuse orders and was pepper sprayed.

20  After Plaintiff was sprayed, he stood up and was escorted to the hospital.  Defendants argue that none

21  of the officers hit or kicked Plaintiff while lifting him into the wheelchair.  Defendants further argue

22  that Defendant Bueno did not arrive at the scene until after Plaintiff was pepper sprayed and placed

23  in the wheel chair, and never physically touched Plaintiff.

24      The Court finds that Plaintiff has submitted sufficient evidence in support of his excessive

25  force claims to defeat Defendants' motion for summary judgment.  Plaintiff's verified complaint may

26  be treated as an affidavit in opposition to Defendants' motion for summary judgment to the extent

27  that it is based on personal knowledge and sets forth specific facts admissible in evidence.  Lopez

28  v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000).  Plaintiff's complaint alleges that Valdez, Lee,

13

Ponce, Purvis, Baer, and Buenos piled on Plaintiff's back, legs, shoulders, and head and pummeled Plaintiff with their fists, feet, and knees. Plaintiff alleges that "[t]hey used various Judo-Type holds, and locks on my legs, ankles, wrists, fingers and neck to inflict massive pain on [Plaintiff]." (Compl. ¶ 40, ECF No 1.) Plaintiff also alleges that he was blasted "all about the head at point-blank range" with pepper spray. Plaintiff alleges that he was lying face down and shackled during the entire incident and did not kick, spit, or lash out in any way against the officers. The facts in Plaintiff's complaint are based on Plaintiff's personal knowledge and would be admissible in evidence. Further, Plaintiff re-alleged these same facts in a declaration submitted with his opposition.

Taking the evidence together, there is a genuine dispute of material fact concerning whether the degree of force used by Defendants was excessive. Accordingly, the dispute cannot be resolved on a motion for summary judgment. The Court will recommend that Defendants' motion for summary judgment be denied with respect to Plaintiff's excessive force claims against Defendants Baer, Valdez, Bueno, Lee, Ponce, and Purvis.

### 2. Retaliation Claims Against Defendants Baer, Valdez, Bueno, Lee, Ponce, and Purvis

Defendants argue that there is no evidence that Defendants Baer, Valdez, Bueno, Lee, Ponce, or Purvis took adverse action against Plaintiff for filing lawsuits or grievances and there is no evidence that Plaintiff's exercise of his First Amendment rights were chilled. Defendants argue that they are therefore entitled to summary judgment with respect to Plaintiff's retaliation claims.

In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is

sufficient to support a claim under Section 1983.  <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288 (9th Cir. 2003).

Defendants' argument that there is no evidence of any actual chilling of Plaintiff's exercise of his First Amendment rights is insufficient to support judgment as a matter of law.  In retaliation claims, "the proper First Amendment inquiry asks 'whether an official's act would chill <u>or</u> silence a person of ordinary firmness from future First Amendment activities.'"  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 569 (9th Cir. 2005) (quoting <u>Mendocino Environmental Center v. Mendocino County</u>, 192 F.3d 1283, 1300 (9th Cir. 1999)) (emphasis in original).  The Ninth Circuit went on to say: "[a plaintiff] does not have to demonstrate that his speech was actually inhibited or suppressed," "because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity."  <u>Id.</u> (internal citations and quotations omitted).

Defendants attempt to demonstrate the absence of any chilling effect because Plaintiff proceeded to file more lawsuits and grievances.  However, Plaintiff does not have to demonstrate that his First Amendment speech was actually inhibited or suppressed; he needs to show that Defendants' actions would chill or silence a person of ordinary firmness from future First Amendment activities.  The Court finds that Plaintiff has submitted sufficient evidence for a fact-finder to conclude that Defendants' actions would have silenced a person of ordinary firmness. Defendants are not entitled to judgment simply because Plaintiff was determined and persisted in his protected activity.

Defendants also argue that there is no evidence that any defendant housed Plaintiff in a different cell, placed Plaintiff on strip cell status, stole Plaintiff's property, or deprived Plaintiff of his legal materials.

In his complaint, Plaintiff alleges that:

> Sgt.'s. Baer, Valdez, and Buenos ordered C/O Lee, C/O Ponce, and C/O Purvis to place [Plaintiff] in building 4A4L, Cell 64, which is in a entirely different unit than building 4A4R where I had normally been housed.  It was on the second-tier although I am restricted to lower-tier cell placement by administrative memorandum, and Cell 64 had a perforated-door although I am restricted to cell placement in cells with solid steel-slab doors by administrative memorandum.

1  (Compl. ¶ 44, ECF No. 1.)  Plaintiff further alleges that his new cell assignment resulted in his

2  placement in an exercise with rival gang members and he lost access to inmates who formerly served

3  as Plaintiff's "legal assistants."

4        Plaintiff also alleged that he was denied all access to his personal property "based on the

5  express orders of Defendants Baer, Valdez, and Buenos."  (Compl. ¶ 48, ECF No. 1.)  After

6  Plaintiff's cell change, Plaintiff noticed that several legal materials, records, and items of personal

7  property were missing.  Plaintiff further alleged that "Defendants Baer, Valdez, and Buenos ordered

8  that [Plaintiff] be placed on 'strip-cell status.'" (Compl. ¶ 51, ECF No. 1.)  In the declaration

9  submitted with his opposition, Plaintiff re-alleged that "Defendant Baer and Baldez had ordered

10  [Plaintiff] placed on strip-cell status."  (Decl. of Barry L. Lamon in Supp. of His Opp'n to Def.'s

11  Mot. for Summ. J./Mot. for Summ. J. as a Matter of Law ¶ 41, ECF No. 68.)

12        It is unclear whether Plaintiff's statements can be treated as proper evidence in opposition

13  to Defendants' motion to dismiss because it is unclear whether Plaintiff has personal knowledge of

14  the facts he relies on in his opposition.  Although personal knowledge may be inferred from

15  statements made in affidavits, see Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir.

16  1990), some statements in Plaintiff's complaint and declaration are not supported by any inference

17  of personal knowledge.  For example, Plaintiff alleges that Defendants Baer, Valdez, and Buenos

18  ordered that Plaintiff  be moved to another cell.  However, Plaintiff does not explain how he

19  determined that Baer, Valdez, and Buenos issued that order.  If Plaintiff's knowledge is based on

20  hearsay statements he heard from other prison officials or inmates, or hearsay he read in other

21  documents, it is not based on personal knowledge and may be inadmissible to defeat Defendants'

22  motion for summary judgment.  See Federal Rule of Civil Procedure 56(c)(2), (c)4) ("A party may

23  object that the material cited to support or dispute a fact cannot be presented in a form that would

24  be admissible in evidence" and "[a]n affidavit or declaration used to support or oppose a motion

25  must be made on personal knowledge"); Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir.

26  1995) (declarations based on information and belief in opposition to motion for summary judgment

27  "entitled to no weight because the declarant did not have personal knowledge.").

28  ///

1    Plaintiff's complaint and opposition do not set forth sufficient information to defeat

2    Defendants' motion for summary judgment with respect to Plaintiff's retaliation claims against

3    Defendants Baer, Valdez, Bueno, Lee, Ponce, and Purves.  However, Plaintiff has indicated that he

4    has been unable to forward certain documents in support of his opposition because the prison's law

5    library will not permit Plaintiff to copy more than 100 pages of text.  Plaintiff indicates that he

6    attempted to send 233 pages of evidence to the Court in support of his opposition.  As discussed in

7    more detail below, the Court will provide Plaintiff with an opportunity to submit the necessary

8    documents to oppose Defendants' motion for summary judgment within 30 days of the date of

9    service of this order.  See discussion infra Part III.E.

10                  **3.    Claims Against Defendants Adams, Junious, and Callow**

11    Defendants argue that Adams, Junious, and Callow are entitled to judgment because their

12    subordinates did not violate Plaintiff's rights and there was no policy that permitted the staff to

13    violate the rights of prisoners.

14    Supervisory personnel are generally not liable under Section 1983 for the actions of their

15    employees under a theory of respondeat superior and, therefore, when a named defendant holds a

16    supervisory position, the causal link between him and the claimed constitutional violation must be

17    specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld,

18    589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief

19    under Section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that

20    would support a claim that supervisory defendants either: personally participated in the alleged

21    deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or

22    promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of

23    constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885

24    F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th

25    Cir. 1989).

26    Defendants argue that there is no evidence of any official policy or practice of classifying

27    inmate appeals as staff complaints for the purpose of covering up incidents of misconduct and

28    effectively rendering staff immune to any remedial action.  Defendants argue that there is no

evidence that Adams, Junious, or Callow should have taken any remedial action against the staff because an investigation concluded that there was no violation of Plaintiff's rights. Defendants contend that the only policy that the staff was found to have violated was a policy to obtain a video camera before force is applied against inmates. Defendants further allege that a confidential investigation was conducted in response to Plaintiff's allegations. Defendant Callow and the Use of Force Committee reviewed and investigated Plaintiff's allegations and Plaintiff's contention that his complaints were "buried" are false. Defendants contend that the staff is adequately disciplined if the staff is found to have violated an inmate's constitutional rights.

Plaintiff argues that Defendants have not provided Plaintiff with discovery and that "Defendant Da Veiga[sic] never answered the complaint." (Opp'n 6:12-8:21, ECF No. 70.) Plaintiff contends that he should have been provided an attorney.

In an order issued concurrently with this order, the Court denied the only pending motion filed by Plaintiff regarding Defendants' conduct during discovery. Accordingly, all disputes regarding discovery have been resolved. Plaintiff's arguments regarding Defendants' "blatant defiance of the Court's order" will be disregarded, as the Court has found that Defendants did not violate any court orders.

Defendant Da Viaga has not answered Plaintiff's complaint because Da Viaga has not been served and has not made an appearance in this action. On January 18, 2011, the Court ordered Plaintiff to show cause why Da Viaga should not be dismissed under Federal Rule of Civil Procedure 4(m). Therefore, Plaintiff's arguments regarding Di Viaga's failure to answer Plaintiff's complaint will be disregarded. With respect to Plaintiff's requests for an attorney, Plaintiff has been informed that he has no constitutional right to an attorney in this lawsuit.

Defendant argues that "Da Veiga[sic] and Callow were informed by the Plaintiff on numerous occasions about the broad pattern of retaliation against not only Plaintiff, but numerous other SHU inmates as well." (Opp'n 7:17-19, ECF No. 70.) Plaintiff contends that "Adams, Junious, Da Veiga[sic], and Callow are responsible for the hiring and firing and training and discipline of Corcoran SHU staff." (Opp'n 7:25-26, ECF No. 70.) Plaintiff contends that they are not entitled to summary judgment because of "the tremendous number of poorly investigated,

although well-complained of uses of improper force, and retaliation against inmates." (Opp'n 7:27-8:3, ECF No. 70.)

It is unclear whether Plaintiff has personal knowledge of the facts relevant to his claims against Defendants Adams, Junious, Da Viaga, and Callow.  Plaintiff has not explained how he knows that Adams, Junious, Da Viaga, and Callow were aware of a serious threat to Plaintiff's safety, or promulgated a policy so deficient that it was a repudiation of constitutional rights and was the moving force behind the alleged constitutional violation.

Although Plaintiff's complaint and opposition do not contain enough information to defeat Defendants' motion for summary judgment with respect to Plaintiff's claims against Defendants Adams, Junious, Da Viaga, and Callow, Plaintiff has indicated that he has been unable to forward certain documents in support of his opposition because the prison's law library will not permit Plaintiff to copy more than 100 pages of text.  As discussed in more detail below, the Court will provide Plaintiff with an opportunity to submit the necessary documents to oppose Defendants' motion for summary judgment within 30 days of the date of service of this order.  See discussion infra Part III.E.

### D.   Qualified Immunity

Defendants argue that Adams, Junious, and Callow are entitled to qualified immunity. Defendants contend their conduct did not violate any clearly established law and that Adams, Junious, and Callow merely reviewed a staff complaint and determined that Plaintiff's allegations were not supported by the evidence.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "The protection of qualified immunity applies regardless of whether the government official's error 'is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).  Questions regarding qualified immunity should be resolved at the earliest possible stage in litigation because qualified immunity serves as an immunity

1   from suit rather than a mere defense to liability.  Id.

2       In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence

3   for resolving claims of qualified immunity.  First, a court must decide whether the facts alleged by

4   a plaintiff set forth a violation of a constitutional right.  Saucier, 533 U.S. at 201.  Second, if the

5   plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly

6   established" at the time of defendant's alleged misconduct.  Id.  If the defendant did not violate a

7   clearly established constitutional right, the defendant is entitled to qualified immunity from

8   plaintiff's claims.  Pearson, 129 S. Ct. at 816 (citing Anderson v. Creighton, 483 U.S. 635, 640

9   (1987)).  However, the Supreme Court has since held that the Saucier sequence is not mandatory in

10  all cases and courts may resolve the "clearly established" question first when the Saucier sequence

11  would result in a "substantial expenditure of scarce judicial resources on difficult questions that have

12  no effect on the outcome of the case."  Id. at 818.

13      Defendants argue that they are entitled to qualified immunity based on their version of the

14  facts.  However, the Court must resolve the question of qualified immunity by viewing the facts in

15  the light most favorable to Plaintiff.  Saucier, 533 U.S. at 201.  While Defendants assert that Adams,

16  Junious, and Callow did not know of any risk to Plaintiff's safety and conducted a good faith

17  investigation into Plaintiff's allegations, Plaintiff alleges that they knew of a risk to Plaintiff's safety

18  and the investigation was a sham.  Plaintiff alleges that Adams, Junious, and Callow ignored

19  Plaintiff's complaints and covered up any misconduct pursuant to a "shadow policy" to protect

20  prison staff members.  Accordingly, Plaintiff alleges that Adams, Junious, and Callow are liable for

21  their subordinates' use of excessive force and retaliation because 1) they knew about their

22  subordinates' history of misconduct and failed to intervene, and 2) they implemented a "shadow

23  policy" which enabled their subordinates to violate prisoners' constitutional rights.  Plaintiff's

24  allegations regarding Adams, Junious, and Callow's participation in the alleged violation of

25  Plaintiff's constitutional rights are sufficient to support a claim for relief.[3]

26      The Court also finds that the rights at issue were clearly established at the time of Adams,

27

28      [3] Whether Plaintiff has sufficient evidence to support his allegations of a "shadow policy" is an issue that
    must resolved separately from the qualified immunity analysis.  See discussion supra Part III.C.3 (discussing whether
    Plaintiff has sufficient evidence to support his claims under Rule 56).

1   Junious, and Callow's alleged misconduct.  The relevant law regarding retaliation and the use of

2   excessive force was clearly established.  See discussion supra Parts III.C.2 (discussing cases

3   establishing liability for the use of excessive force and retaliation).  The relevant law regarding

4   supervisory liability was also clearly established at the time of Defendants' actions.  See discussion

5   supra Part III.C.3 (discussing cases establishing theories for liability against supervisors).

6   Accordingly, the Court finds that Defendants Adams, Junious, and Callow are not entitled to

7   qualified immunity.

8   **E.   Plaintiff's Order of Protection**

9   In a declaration filed with his opposition, Plaintiff indicates that he was unable to submit

10  evidence in support of his opposition because the prison's law library would not permit Plaintiff to

11  copy 233 pages of documents.  On January 19, 2011, Plaintiff filed a motion requesting an "order

12  of protection."  (Doc. #78.)  Specifically, Plaintiff requests a court order requiring the prison to

13  provide 233 pages of photocopies of documents Plaintiff wishes to submit with his opposition.

14  The Court will construe Plaintiff's motion as a motion requesting injunctive relief.  The

15  purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily

16  favors the moving party that justice requires the court to intervene to secure the positions until the

17  merits of the action are ultimately determined.  University of Texas v. Camenisch, 451 U.S. 390, 395

18  (1981).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

19  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

20  balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v.

21  Natural Resources Defense Council, Inc., 129 S. Ct. 365, 374 (2008).

22  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be

23  granted unless the movant, by a clear showing, carries the burden of persuasion."  Mazurek v.

24  Armstrong, 520 U.S. 968, 972 (1997) (quotations and citations omitted) (emphasis in original).  A

25  party seeking a preliminary injunction simply cannot prevail when that motion is unsupported by

26  evidence.  With respect to motions for preliminary injunctive relief or a temporary restraining order,

27  the Prison Litigation Reform Act ("PLRA") provides that:

28  [i]n any civil action with respect to prison conditions, to the extent
    otherwise authorized by law, the court may enter a temporary

21

1    restraining order or an order for preliminary injunctive relief.
2    Preliminary injunctive relief must be narrowly drawn, extend no
     further than necessary to correct the harm the court finds requires
3    preliminary relief, and be the least intrusive means necessary to
     correct that harm.

4    18 U.S.C. § 3626(a)(2).

5    Plaintiff's request for preliminary injunctive relief will be denied.  Plaintiff has failed to

6    demonstrate that the request he seeks is narrowly drawn, extends no further than necessary to correct

7    the harm the court finds requires preliminary relief, and that the request for relief is the least intrusive

8    means necessary to correct the harm.  The Court notes that Plaintiff has failed to describe any efforts

9    he made to obtain photocopies in smaller batches.  Plaintiff further has not described any efforts he

10   made to obtain photocopies by employing copy services outside the prison.

11   Plaintiff has also failed to adequately demonstrate that he will suffer irreparable harm in the

12   absence of injunctive relief.  Plaintiff has not demonstrated why more than 200 pages of documents

13   are necessary to successfully oppose Defendants' motion for summary judgment.  Plaintiff has failed

14   to identify the nature of these documents and how they are necessary to defeat Defendants' motion

15   for summary judgment.   The Court will not grant injunctive relief if Plaintiff is unable to

16   demonstrate why such a large number of documents is necessary to oppose Defendants' motion.

17   The arguments and evidence Plaintiff needs to submit  to oppose Defendants' motion are

18   1) Plaintiff's evidence in support of his contention that Defendants Baer, Valdez, Bueno, Lee, Ponce,

19   or Purvis retaliated against Plaintiff and 2) Plaintiff's evidence in support of his contention that

20   Defendants Adams, Junious, Da Viaga, and Callow acted with deliberate indifference toward a threat

21   to Plaintiff's safety.  Specifically, to oppose Defendants' motion for summary judgment, Plaintiff

22   need only submit evidence supporting his allegation that Defendants Baer, Valdez, Bueno, Lee,

23   Ponce, or Purvis rehoused Plaintiff in a different cell, placed Plaintiff on strip cell status, stole

24   Plaintiff's property, or deprived Plaintiff of his legal materials.  Plaintiff must also submit evidence

25   to support his allegation that Adams, Junious, Da Viaga, and Callow were aware of a substantial risk

26   to Plaintiff's safety and failed to intervene, or that Adams, Junious, Da Viaga, and Callow

27   implemented policies that were the moving force behind the alleged constitutional violations.

28   The necessary evidentiary showing can be done in less than 100 pages.  Plaintiff may not

defeat Defendants' motion for summary judgment by simply sending large number of documents to the Court.  "[E]ven if an affidavit is on file, a district court need not consider it in opposition to summary judgment unless it is brought to the district court's attention in the opposition to summary judgment."  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir. 2001). In other words, the Court will not consider any affidavits, declarations, or other documents as evidence in support of Plaintiff's opposition unless Plaintiff, in an opposition brief, identifies what the documents are and where they came from, cites to the particular portions of the documents that support his opposition, and sets forth arguments explaining how each document supports the arguments and allegations made in his brief.  "[A] district court is 'not required to comb the record to find some reason to deny a motion for summary judgment.'"  Id. (quoting Forsberg v. Pacific N.W. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988)).  Although a Court may consider materials that are not cited, see Federal Rule of Civil Procedure 56(c)(3), Plaintiff is hereby warned that this Court will not consider any materials that are not specifically cited in an opposition brief and accompanied with arguments explaining how the cited materials support his opposition.

Plaintiff's evidence may only consist of 1) an affidavit from Plaintiff attesting to facts that are within Plaintiff's personal knowledge and would be admissible into evidence, 2) affidavits from other witnesses attesting to facts that are within their personal knowledge and would be admissible into evidence, and 3) documents which are authenticated and the content of which would be admissible into evidence in some form at trial.  All other documents submitted with Plaintiff's opposition will be disregarded.  If Plaintiff's documentary evidence is not accompanied with a brief or declaration clearly identifying the evidence and explaining its probative value, Plaintiff's evidence will be disregarded.  Plaintiff does not have to submit all the evidence in support of his claims. Plaintiff does not have to definitively prove his allegations.  Plaintiff need only submit sufficient evidence to establish a genuine issue of material fact.

Accordingly, the Court will recommend that Plaintiff's request for preliminary injunctive relief be denied.  However, the Court will defer ruling on Defendants' motion for summary judgment with respect to Plaintiff's retaliation claims against Defendants' Baer, Valdez, Bueno, Lee, Ponce, or Purvis and deliberate indifference claims against Defendants Adams, Junious, Da Viaga, and

Callow and provide Plaintiff with an opportunity to submit a supplemental opposition containing the evidence necessary to defeat Defendants' motion for summary judgment.  As explained above, to the extent that Plaintiff finds it necessary to send 233 pages of documents to the Court, Plaintiff must obtain the photocopies from the prison by submitting his requests for copies in batches of less than 100 pages, or by employing a copy service company outside the prison.  Plaintiff's supplemental reply must be submitted within thirty (30) days of the date of service of these findings and recommendations.

**IV.    Conclusion and Recommendation**

The Court finds that Plaintiff failed to plead compliance with the California Tort Claims Act, which renders his state law claims subject to dismissal under California law.

The Court further finds that Plaintiff has submitted sufficient evidence in support of his excessive force claims against Defendants Baer, Valdez, Bueno, Lee, Ponce, or Purvis to establish a genuine issue of material fact under Rule 56.

The Court further finds that Plaintiff has failed to submit sufficient evidence in support of his retaliation claims against Defendants Baer, Valdez, Bueno, Lee, Ponce, or Purvis and in support of his deliberate indifference claims against Defendants Adams, Junious, Da Viaga, and Callow. However, the Court will recommend that Plaintiff be given an opportunity to file a supplemental opposition and submit evidence to support his allegations with respect to these claims.

Additionally, the Court finds that Defendants Adams, Junious, and Callow are not entitled to the qualified immunity defense.  Finally, the Court finds that Plaintiff is not entitled to preliminary injunctive relief.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    Plaintiff's state law claims be DISMISSED for failing to plead compliance with the California Tort Claims Act;

2.    Defendants' motion for summary judgment be DENIED with respect to Plaintiff's use of excessive force claims against Defendants Baer, Valdez, Bueno, Lee, Ponce, or Purvis;

3.    Defendants Adams, Junious, and Callow's qualified immunity defense be DENIED;

24

1    and

2    4.      Plaintiff's request for preliminary injunctive relief be denied.

3    Further it is HEREBY ORDERED that:

4    1.      Plaintiff re-serve his responses to Defendants' requests for admissions within thirty

5            (30) days of the date of service of these Findings and Recommendations; and

6    2.      Plaintiff file a supplemental opposition within thirty (30) days, as described in these

7            Findings and Recommendations.

8    These Findings and Recommendations are submitted to the United States District Judge

9    assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30)

10   days after being served with these Findings and Recommendations, any party may file written

11   objections with the Court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13   shall be served and filed within ten (10) days after service of the objections.  The parties are advised

14   that failure to file objections within the specified time may waive the right to appeal the District

15   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16

17   IT IS SO ORDERED.

18   **Dated:      February 1, 2011**                 **/s/ Sheila K. Oberto**
                                          UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28