**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LOUIS LAMON<br><br>Plaintiff,<br><br>v.<br><br>DERRAL ADAMS, et al.,<br><br>Defendants. | Case No. 1:09-cv-00205-LJO-SMS  PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THE COURT GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br><br>(Docs. 232 and 243) |

Plaintiff Barry Louis Lamon is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. His claims arise from an incident on June 7, 2008, in which Plaintiff refused to proceed to the prison hospital following his refusal to take court-ordered medication. Plaintiff alleges that Defendants Sgt. Baer, Sgt. Bueno, C.O. Lee, C.O. Ponce, C.O. Purvis, and Sgt. Valdez (1) responded to his noncompliant behavior with excessive force in violation of the Eighth Amendment; (2) demonstrated deliberate indifference to a threat to Plaintiff's safety arising from his cell reassignment following the incident; and (3) acted in retaliation to Plaintiff's history of filing institutional complaints and court actions.

Both parties have filed for summary judgment. Following its review of the motions and supporting materials submitted by the parties, the record as a whole, and applicable law, the

undersigned finds that Plaintiff has failed to carry his burden of proving his claims. Accordingly, the undersigned recommends that the Court deny Plaintiff's motion for summary judgment and grant Defendants' motion for summary judgment.

## I. Procedural History

For purposes of the pending motions, the undersigned need not detail the protracted and often unorthodox course of this case since Plaintiff filed the complaint on February 2, 2009.

On June 14, 2011, following rescreening of the complaint, the Court ordered that the complaint would proceed "only on Plaintiff's claims against Defendants Baer, Valdez, Buenos, Lee, Ponce, and Purvis for Eighth Amendment excessive use of force and deliberate indifference to a threat to Plaintiff's safety and for retaliation in violation of the First Amendment." Doc. 121 at 2. Plaintiff and Defendants then pursued an additional period of discovery and multiple non-dispositive motions.

On November 12, 2013, Defendants moved for summary judgment. Plaintiff responded by filing a motion for summary judgment on February 27, 2014. Defendants responded to Plaintiff's motion on April 9, 2014. On May 5, 2014, the Court struck Plaintiff's untimely opposition to Defendant's motion for summary judgment, which he had filed on April 24, 2014. Thereafter, Plaintiff filed, and the Court denied, a motion for reconsideration of its order striking his untimely response.

## II. Statement of Facts

At all times material to the claims in this action, Plaintiff was an inmate at California State Prison, Corcoran (CSP-COR) and housed in unit 4A of the Security Housing Unit (SHU). Defendants were employees of the California Department of Corrections and Rehabilitation (CDCR). On June 7, 2008, the night of the incident giving rise to Plaintiff's claims, Sgt. Baer was Acting Lieutenant in the 4A housing unit at CSP-COR.

///

At various times that evening, Plaintiff complained to one or more Defendants that his evening meal was inedible and demanded to see a sergeant. (In 2008, if an inmate claimed to have been served contaminated, spoiled, or improperly prepared food, the correctional officers who were serving the inmates were required to call the building sergeant for replacement.[1]) Plaintiff, who believed that correctional officers regularly tampered with his food,[2] had a history of challenging the quality of his meals.

At about 6:00 p.m., Plaintiff refused his court-ordered medication. (Plaintiff candidly admitted that his refusing the medication was a ploy intended to bring the building sergeant to his cell to discuss the quality of Plaintiff's dinner.) In 2008, CSP-COR operating policy directed that any inmate who refused to take his court-ordered medication in his unit would be taken to the John D. Klarich Memorial Hospital (JDKMH), located at CSP-COR, for its intravenous administration. Accordingly, at about 8:45 p.m., some or all of the Defendants ordered Plaintiff to leave his cell (4A4R06) to be escorted to JDKMH. As Acting Lieutenant, Baer reported to Plaintiff's cell to direct him to come out to be escorted to JDKMH.

Plaintiff left his cell voluntarily. (Accordingly, Defendants were not required to extract Plaintiff from his cell, although they were prepared to do so.) Defendants Ponce and Purvis escorted Plaintiff, who was handcuffed; Lee accompanied them to maintain continuous control of the lanyard attached to Plaintiff's restraints. (Plaintiff claimed that while proceeding through the building rotunda, he overheard a remark that his property was to be removed from his cell.) Because Lee never abandoned the lanyard, he asserted that he would have been unable to use physical force against Plaintiff. Baer followed closely behind Plaintiff and his escorts. (According to Plaintiff, licensed vocational nurse (LVN) Martin and a correctional officer manning a video recorder also accompanied him: Defendants deny this.)

---

[1] Factual statements included within parentheses are not listed among the parties' undisputed facts but are helpful to the reader's understanding of the dynamics of the underlying incident.
[2] Plaintiff does not accuse any Defendant in this action of tainting his food. Doc. 183 at 13.

3

As the group proceeded to JDKMH, Plaintiff fell onto his knees about thirty yards from the 4A4R housing unit. (Plaintiff explained that he decided that, if he were taken to JDKMH for intravenous medication, he would be assigned to a new cell upon his return.) The escorts lowered Plaintiff to the ground, where he laid face-down, tightening his muscles to stiffen his body and prevent his being lifted and moved. Seeing Plaintiff's actions, Baer and Valdez rushed to join the escort group. Baer ordered Plaintiff to stand up and proceed. (Plaintiff claims that he demanded to be returned to his cell to take his medication orally: Defendants deny this.)

While Plaintiff remained on the ground, an unidentified staff member brought a wheelchair to the scene. Baer repeatedly ordered Plaintiff to get up off the ground and sit in the chair before directing the correctional officers to bring Plaintiff to his feet. (Plaintiff argues that the Defendants should have merely lifted him into the chair; Defendants deny that this could have been done safely since Plaintiff's resistive stiffening made it difficult for them to raise Plaintiff to a standing position.) Deeming the situation a risk to Plaintiff and Defendants, Baer ordered Plaintiff to stop resisting and warned him that he would use O.C. (oleoresin capsicum) pepper spray if Plaintiff did not comply.

When Plaintiff continued to resist, Baer administered the pepper spray. (Baer maintains that he applied one burst to Plaintiff's facial area from about three feet away; Plaintiff claims that Baer inserted the pepper spray nozzle into his ear and sprayed. Plaintiff adds that Defendants hit and kicked him at the same time; Defendants deny hitting or kicking Plaintiff.) Plaintiff then stopped resisting and was helped to a wheelchair.

Defendant Bueno arrived at the scene following administration of the pepper spray. Plaintiff was taken back to the housing unit for decontamination in a shower. Thereafter, LVN Martin examined Plaintiff in the 4A rotunda, observing no injuries. Plaintiff was then taken to JDKMH to receive his court-ordered medication. The medical provider at JDKMH noted that Plaintiff's eyes were red but that he was otherwise uninjured.

///

4

Plaintiff returned to the housing unit, where he was rehoused in cell 4A4L-64L.  (According to Defendants, Plaintiff was given toilet paper, tooth powder, a tooth brush, and soap, and issued SHU clothing consisting of boxers, T-shirt, and socks. The cell contained a mattress, pillow, sheets, and blanket.  Plaintiff contends that he was assigned strip-cell status, that is, confinement in a bare cell clothed only in boxer shorts.)

Plaintiff does not identify any specific Defendant(s) as responsible for the new housing assignment.  Neither Baer not Valdez had any memory of Plaintiff's June 7, 2008 cell reassignment. None of the other Defendants (Lee, Bueno, Ponce, and Purvis) had authority to re-assign an inmate to a different cell.

(Plaintiff contends that as a result of the cell reassignment his personal property was not properly inventoried, documented, and stored, resulting in the loss of postage stamps, personal hygiene items, legal records, and law books.[3]  Plaintiff does not identify any Defendant as being involved in the removal of his property from his original cell.  No Defendant has any recollection of being present when Plaintiff's personal property was moved on June 7, 2008.  All Defendants deny stealing or otherwise depriving Plaintiff of his personal property or conspiring to do so.)

(Plaintiff further contends that as a result of the cell reassignment, Defendants Baer, Bueno, and Valdez assigned Plaintiff, a Blood gang member, to a yard populated by his rivals, members of the Crips.  Baer, Valdez, and Bueno deny assigning Plaintiff to any exercise yard and deny any knowledge that Plaintiff was ever assigned to a yard with Crips or other known enemies.)  No Defendant was a member of the Classification Committee that assigned inmates to yards.

On July 9, 2008, Plaintiff was found guilty of resisting a peace officer resulting in the use of force in the course of the events on June 7, 2008.

///

---

[3] Although both parties set forth facts relevant to Plaintiff's claim of missing property, that issue is not now before the Court.  *See* Doc. 121 at 2.

### III.  **Summary Judgment**

Summary judgment should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits submitted show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  F.R.Civ.P. 56(c)(2); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  A fact is material if it could affect the outcome of the suit under applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 248; *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

When the moving party will have the burden of proof on an issue at trial, it must demonstrate that no reasonable trier of fact could find other than for the moving party.  *Soremekun*, 509 F.3d at 984.  When the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or merely by pointing out that no evidence supports an essential element of the non-moving party's claim.  *See Soremekun*, 509 F.3d at 984; *Nissan Fire and Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion."

*Id.* at 1102-03.  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  *Id.* at 1103.  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleadings but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.) *(quoting* F.R.Civ.P. 56(e)), *cert. denied*, 555 U.S. 827 (2008).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *See Anderson*, 477 U.S. at 255; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003).  Nonetheless, inferences are not drawn out of the air, and the opposing party bears the obligation of producing a factual predicate from which the inference may be drawn.  *See Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1163 (E.D.Cal. 2008), *aff'd*, 340 Fed.Appx. 377 (9th Cir. 2009); *UMG Recordings, Inc. v. Sinnott*, 300 F.Supp.2d 993, 997 (E.D.Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial."  *del Carmen Guadelupe v. Negron Agosto*, 299 F.3d 15, 23 (1st Cir. 2002).

A court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, even though a court is not required to examine the entire file for evidence establishing a genuine issue of material fact when the opposing party has not set forth the evidence with adequate references.  *See Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  *See Nissan Fire & Marine*, 210 F.3d at 1103.

## IV. Discussion

### A. Eighth Amendment: Excessive Use of Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). For claims arising from the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (*per curiam*); *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency. *Hudson*, 503 U.S. at 8. Although *de minimus* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. *Wilkins*, 559 U.S. at 37-38; *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. *Wilkins*, 559 U.S. at 37. Minimal use of force does not violate the Constitution if it is not repugnant to the conscience of mankind. *Id.* at 37-38. In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of a prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it. *Hudson*, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency. *Wilkins*, 559 U.S. at 37. Ultimately, the use of force, not the resulting injury, is the determinative factor. *Id.* at 37-38.

The first analytical step in this case is to resolve the nature of the attack on Plaintiff, about which the parties disagree. Defendants maintain that Acting Lt. Baer compelled Plaintiff's

8

compliance with his order to stand up by aiming a brief burst of O.C. pepper spray to Plaintiff's face from a distance of three feet.  Plaintiff contends that one of the Defendants, whom Plaintiff was unable to identify, blasted pepper spray directly into his ear, resulting in long-term distress, and that all six Defendants punched and kicked him.

As discussed above, the party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323; *Soremekun,* 509 F.3d at 984.  A dispute about a material fact is genuine only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248; *Long,* 442 F.3d at 1185).  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Est. of Tucker,* 515 F.3d at 1030 (9th Cir.).  Plaintiff has failed to produce any evidence other than his own claims to support his allegations.

That Plaintiff was pepper-sprayed is undisputed.  Nothing in the exhibits or the record as a whole supports Plaintiff's claim that a defendant inserted the nozzle and sprayed into his ear, however.[4]  One might reasonably expect that a blast of O.C. pepper spray directly into an ear canal, even very briefly, would result in serious injury to sensitive tissue.  *See, e.g.*, *Furnace*, 705 F.3d at 1025 (spraying O.C. pepper spray through a food port directly into the plaintiff's face resulted in burns and blisters).  But there is no record that Plaintiff complained to Martin or medical providers of being sprayed in the ear or that he later sought treatment for the long-term pain and distress that he claims to have experienced afterward.  The parties agree that Plaintiff was decontaminated by placing him in a shower and flushing the sprayed areas with copious amounts of water.  The

---

[4] Throughout the protracted development of this case, Plaintiff has maintained that correctional officers video-recorded the assault but later destroyed the record.  Defendants have consistently denied that the incident was recorded, and in fact, a disciplinary inquiry formally admonished the officers for failing to retrieve a video camera to record the administration of the O.C. pepper spray.  The Court does not condone Defendants' failure to document the incident.  But, as will be discussed below, records of medical attention provided to Plaintiff following the incident document that Plaintiff was uninjured other than eye irritation following the spraying.

JDKMH treatment report indicates that Plaintiff was uninjured except for redness of his eyes and that he was further decontaminated by allowing him to sit in a fan breeze. Because no factual basis supports Plaintiff's claim of being sprayed directly into his ear canal, the undersigned finds no issue of material fact exists regarding the nature of Baer's pepper spraying Plaintiff.

Similarly, the only evidence that Plaintiff was beaten and kicked is his own assertion of that fact. In light of medical evidence finding no injuries after the incident other than red eyes and the absence of any other support for Plaintiff's assertion, no issue of material fact exists regarding whether Plaintiff was beaten in the incident and subjected to a blast of pepper spray directly into his ear.

Since uncontroverted evidence indicates that Baer administered a shot of pepper spray to induce Plaintiff to move from the ground to the waiting wheelchair, the next determination is whether that administration of pepper spray was unreasonable under the circumstances. Plaintiff produced no evidence supportive of such a conclusion. Instead, he sought to justify his own failure to comply with applicable rules by first claiming that he had to refuse his court-ordered medication to bring Baer's attention to his perception that his dinner was inedible and then claiming that he could not allow himself to be taken to JDKMH after he perceived that correctional officers intended to move him to another cell when he returned. In short, Plaintiff himself concedes that he was pepper sprayed after he twice attempted to manipulate correctional staff for his own purposes.

"Force does not amount to a constitutional violation in this respect if it is applied in a good faith effort to restore discipline and order and not 'maliciously and sadistically for the purpose of causing harm.'" *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The malicious and sadistic standard is high, requiring more culpable behavior than objective unreasonable force. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

Administration of pepper spray to induce a recalcitrant prisoner "to follow directions falls within the wide-ranging zone of deference accorded to prison officials in shaping "prophylactic or

preventive measures intended to reduce the incidence . . . of breaches of prison discipline." *Stewart v. Stewart*, 60 Fed.Appx. 20, 22 (9th Cir. 2003) (quoting *Whitley*, 475 U.S. at 322). *See also Howard v. Nunley*, 465 Fed.Appx. 669, 670 (9th Cir. 2012) (affirming the district court's grant of summary judgment to the defendant correctional officers where it was uncontested that the defendants administered pepper spray only after the plaintiff was warned to stop pounding on his cell door and that continued pounding would result in his being sprayed); *Rodriguez v. Elmore*, 407 Fed.Appx. 124, 125 (9th Cir. 2010) (affirming the district court's grant of summary judgment to defendant correctional officers when defendants had administered pepper spray to the plaintiff and his cell mate after they refused to comply with orders to exit their cell to permit a search for a missing metal object); *Randle v. Miranda*, 315 Fed.Appx. 645, 645 (9th Cir. 2009) (affirming the district court's grant of summary judgment to the defendant correctional officers when the undisputed facts showed that the defendants used pepper spray in a good faith effort to restore discipline and order); *Allen v. Bosley*, 253 Fed.Appx. 658, 659 (9th Cir. 2007) (holding that the plaintiff failed to raise a cognizable issue that the defendant correctional officers used excessive force when they administered pepper spray to induce another inmate to comply with orders to submit to handcuffing); *Robinson v. Okamoto*, 26 Fed.Appx. 749, 749 (9th Cir. 2002) (affirming the district court's grant of summary judgment to the defendant correctional officer who sprayed the plaintiff after he refused to comply with the officer's commands).

No material facts indicate that any Defendant punched or kicked Plaintiff. Baer administered pepper spray only after Plaintiff failed multiple commands to get up from the ground and after warning Plaintiff that failure to comply would result in Baer's spraying him. Other than their presence during the incident, the remaining defendants are not linked to the administration of the pepper spray in any way. Accordingly, the undersigned recommends that the Court grant summary judgment on the Eighth Amendment claim of the use of excessive force as to all Defendants.

///

### B.       Eighth Amendment: Deliberate Indifference to Safety

Prison officials are required "to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982), abrogated on other grounds by *Sandlin v. O'Connor*, 515 U.S. 472 (1995). To prove a violation of the Eighth Amendment the plaintiff must "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health and safety." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted). Deliberate indifference requires a showing that prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety and that there was no "reasonable justification for the deprivation, in spite of that risk." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In addressing this claim, Plaintiff blurs three issues: (1) his June 7, 2008 relocation to cell 4A4L-64L; (2) his subsequent reassignment to a yard that included inmates who, as members of an opposing gang, were his enemies; and (3) the loss of certain personal property as a result of his being re-celled.

### 1.       Linking Defendants to Plaintiff's Complaints

Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). To state a claim for relief under Section 1983, Plaintiff must link each Defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's rights. Other than identifying Defendants Lee and Purvis as the officers who escorted him to a new cell following administration of his court-ordered medication at JDKMH, Plaintiff fails to link any Defendant directly to this claim.

### 2.       Rehousing on June 7, 2008

Plaintiff alleges that Defendants' reassigning him to cell 4A4L-64L upon his return from JDKMH constituted deliberate indifference to his safety. Reassigning Plaintiff to a cell 4A4L-64L

did not, of itself, endanger Plaintiff's safety. Deliberate indifference, if any, could arise only from Plaintiff's having been confined to the cell clad only in boxer shorts, without a mattress, as Plaintiff asserts. But Plaintiff has failed to carry his burden of providing evidence to support his contentions, providing only his own declaration and the declaration of a fellow inmate who did not observe the cell but merely attested to Plaintiff's verbal representations (as shouted from the cell) after being placed in cell 4A4L-64L following his return from JDKMH.

That Defendants Purvis and Lee escorted Plaintiff from JDKMH to cell 4A4L-64L is uncontested. Lee declared that Plaintiff was given standard SHU-issued mattress, sheets, blankets, toilet paper, tooth powder and brush, soap, and clothing (boxers, t-shirt, and socks).

Defendants maintain that Plaintiff was not placed on strip cell status upon his return from JDKMH. No Defendant has any memory of who ordered Plaintiff re-celled or how Lee and Purvis knew to return Plaintiff to cell 4A4L-64L instead of his former cell. According to Defendants, Lee, Ponce, Purvis, and Bueno lacked authority to assign Plaintiff to strip cell status. Neither Baer nor Valdez remember ordering Defendant placed on strip cell status; Baer was unable to locate any document indicating that he ordered Plaintiff placed on strip cell status on June 7, 2008.

Plaintiff has failed to provide factual support for this allegation.

### 3. **Yard Assignment**

Nothing in the record supports Plaintiff's allegation that the Defendants changed his yard assignment to expose him to his enemies or links any Defendant to any change in Plaintiff's yard assignment. The Declaration of Lt. Munoz, acting captain of the 4A SHU, explained that yard assignments are solely determined by the Institutional Classification Committee (ICC) following an annual meeting with the inmate. Building officers are generally not authorized to change an inmate's yard assignment except to move an inmate to a walk-alone yard for his own safety.

Munoz provided Plaintiff's classification chronos which showed that on September 27, 2007, the ICC continued Plaintiff's assignment to a walk alone yard. On February 7, 2008, before the

incident that is the subject of this case, the ICC reclassified Plaintiff for placement in a controlled/compatible, Black and Northern Hispanic yard (CC B2). It continued the CC B2 classification on September 10, 2008, but on September 17, 2008, returned Plaintiff to walk-alone status.

Plaintiff has failed to provide factual support for this allegation.

### 4. Lost Personal Property

To violate the Eighth Amendment, a defendant's actions must have been deliberately indifferent to an inmate's medical or safety needs. The Eighth Amendment does not address an inmate's personal property rights in any way. Plaintiff presents no factual or logical basis for tying the alleged loss of his personal property to his deliberate indifference claim. To the extent that Plaintiff's complaints of his lost personal property are intertwined with his deliberate indifference claim, they are not material to the issue of deliberate indifference.

### 5. Summary and Recommendation

Plaintiff's having failed to carry his burden of proving his claim of deliberate indifference to safety, the undersigned recommends that the Court grant Defendants' motion for summary judgment on this issue.

### C.   First Amendment: Retaliation

"[P]risoners have a First Amendment right to file prison grievances." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim*, 584 F.3d at 1269. To prevail on a viable claim of First Amendment retaliation, a plaintiff must establish the following elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Brodheim*, 584 F.3d at 1269

14

(quoting *Rhodes*, 408 F.3d at 567-68).  Plaintiff contends that all of the adverse actions against him in the June 7, 2008 incident occurred as retaliation for his filing staff complaints concerning the quality of his meals.

Plaintiff recounts that prior to the incident, he filed more than fifty complaints against Corcoran correctional staff contending that they were reducing the safety, quality, and quantity of his kosher meals as a form of First Amendment retaliation.  The responses were "boilerplate and meaningless."  Doc. 243 at 18.  As a result, Plaintiff began refusing his court-ordered medication as a means of bringing supervisory staff to his cell so that he could show them the condition of his most recent meal.  Drawing supervisory personnel to his cell, explained Plaintiff, also allowed fellow inmates to witness Plaintiff's complaints and the responses he received from staff.  Plaintiff followed this strategy on June 7, 2008, refusing his medication since supervisory staff had not yet come to his cell to look at his unacceptable evening meal and order a replacement meal.  The incident then unfolded as discussed above.

Plaintiff's argument is a classic example of *post hoc, propter hoc* reasoning.  That the June 7, 2008 incident unfolded after his many grievances does not prove that the grievances caused the incident.  Simply put, the incident on June 7, 2008 did not occur because of Plaintiff's zealous pursuit of his right to file grievances—it occurred because Plaintiff first refused to take his court-ordered medication, then immobilized himself and refused to get up while being escorted to JDKMH for intravenous administration as required by standard procedures.  Plaintiff has produced no contrary proof other than his own suspicions.

The undersigned recommends that the Court grant Defendant's motion for summary judgment on the issue of First Amendment retaliation.

**V.      Conclusion and Recommendation**

The undersigned recommends that the Court grant the Defendants' motion for summary judgment on all counts.

These findings and recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, either party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 4, 2015**              /s/ Sandra M. Snyder
                                                    UNITED STATES MAGISTRATE JUDGE