# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LOUIS LAMON,<br><br>Plaintiff,<br><br>v.<br><br>DERRAL ADAMS, et al.,<br><br>Defendants. | Case No. 1:09-cv-00205-LJO-SMS PC<br><br>MEMORANDUM DECISION AND ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART FINDINGS AND RECOMMENDATIONS; AND DENYING IN PART AND GRANTING IN PART THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>(Docs. 232, 243, and 265) |

## I. INTRODUCTION

Plaintiff Barry Louis Lamon is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. His claims arise from an incident on June 7, 2008, in which Plaintiff refused to proceed to the prison hospital following his refusal to take court-ordered medication. Plaintiff alleges that Defendants Baer, Bueno, Lee, Ponce, Purvis, and Valdez, prison staff at California State Prison – Corcoran, (1) responded to his noncompliant behavior with excessive force in violation of the Eighth Amendment; (2) demonstrated deliberate indifference to a threat to Plaintiff's safety arising from his cell reassignment following the incident; and (3) acted in retaliation to Plaintiff's history of filing institutional complaints and court actions. Defendants moved for summary judgment on November 12, 2013 (Doc. 232); Plaintiff moved for summary judgment on February 27, 2014 (Doc. 243).

The petition was referred to the magistrate judge pursuant to 28 U.S.C. § 636(b). On February 5, 2015, the magistrate judge filed findings and recommendations ("F&Rs") in which she recommended

that the Court grant Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment. Doc. 265.

The Clerk of Court served both parties with the findings and recommendations, which provided that either party could object within thirty days. *Id*. On March 12, 2015, Plaintiff filed objections and requested sanctions against the magistrate judge for applying improper standards. Doc. 266. Plaintiff adds that the magistrate judge abused her discretion in accepting supporting evidence submitted by Defendants. *Id*. On March 19, 2015, Defendants replied, arguing that because Plaintiff failed to prove the existence of a triable issue of fact, granting their motion for summary judgment is appropriate. Doc. 267.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this Court has performed a de novo review of the motions, the applicable law, and the record as a whole, including Plaintiff's objections to the F&Rs. Following careful review, the Court finds that the F&Rs erroneously concluded that no material disputes of fact exist as to Plaintiff's excessive force claim, declines to adopt the portion of the F&Rs concerning that claim, and DENIES both Defendants' and Plaintiff's motions for summary judgment as to that claim. As to Plaintiff's First Amendment retaliation and Eighth Amendment deliberate indifference claim, the Court adopts the conclusions recommended in the F&Rs, and GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for summary judgment on those claims.

## II. STANDARD OF DECISION

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1132 (D. Ariz. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact

finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

The court should "treat the opposing party's papers more indulgently that the moving party's papers." *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985). "A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996) (quoting *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n. 1 (9th Cir. 1987) (per curiam)), *amended by* 135 F.3d 1318 (9th Cir. 1998); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc); *Schroeder v. MacDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *Lew*, 754 F.2d at 1423. If the plaintiff states that the facts in the complaint are true under penalty of perjury, as Plaintiff does in this case, the pleading is "verified." *Schroeder*, 55 F.3d at 460 n. 10. In a prisoner pro se civil rights action, a verified complaint may constitute an opposing affidavit so long as the allegations are based on the inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. *McElyea*, 833 F.2d at 197-98.

### III. DISCUSSION

A.  **Excessive Force Claim.**

Plaintiff alleges that Defendants Valdez, Lee, Ponce, Purvis, Baer, and Buenos utilized excessive force on June 7, 2008 in their response to his refusal to take court-ordered medication. The Court adopts the F&R's explanation of the applicable constitutional standard, Doc. 232-2 at 8-9, which can be summarized as follows: in order for a prisoner to state a claim for excessive force under the Eighth Amendment in connection with a prison security measure undertaken to resolve a disturbance, the force used must be malicious and sadistic, not merely objectively unreasonable. *See Whitely v. Albers*, 475

U.S. 312, 320-21 (1986). In determining whether the constitutional line has been crossed, the court may consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Considering the undisputed facts along with Plaintiff's first-person perspective of disputed events, the following fact pattern emerges. On the evening of June 7, 2008, Plaintiff admits that he declined to accept his court ordered psychiatric medication in order to force the administering correctional employee to summon an officer so that Plaintiff could make a complaint about the quality of the meal he had been served earlier that evening. Verified Complaint ("Compl."), Doc. 1, at ¶ 35. Shortly thereafter, Defendants Valdez, Buenos, and Baer arrived at Plaintiff's cell. (It is somewhat unclear, but it appears that Plaintiff alleges Defendants Lee, Ponce, and Purvis were either already at his cell or responded at some point before and/or during the events in question.) Baer stated that he was the acting lieutenant that night; indicated that he was aware that Plaintiff previously used his medication to raise complaints about meals; and warned Plaintiff that he was not going to tolerate this. *Id*. at ¶ 36. Baer warned Plaintiff that he had two minutes to "cuff up and come out of this cell and take your meds," otherwise he was going to "put a couple of cans of pepper spray in their [sic] on you and your cellmates' ass. When you do come out, your legal property and other stuff is gone for ninety days." *Id*. After realizing his efforts to complain about his meals would be futile, Plaintiff told the officers he would be willing to take his medication orally. *Id*. at ¶ 37. However, according to Plaintiff, when he exited the cell, Baer ordered the other officers to escort him to the Acute Care Hospital ("ACH") so that the medication could be administered intravenously. *Id*.

After exiting the building, Plaintiff overheard Baer, Valdez, and Buenos give orders that his property be moved to another cell. *Id*. at ¶38. Believing that he was being "tricked," Plaintiff laid down prone on the ground, face down and with both hands shackled behind his back, refusing to go farther. *Id*.

5

Plaintiff then reiterated his willingness to swallow the drugs. *Id*. Valdez then ordered an unidentified officer to bring over a wheelchair and ordered Plaintiff to get into it. *Id*. at ¶ 39. When Plaintiff refused, Plaintiff asserts that <u>all</u> of the officers "piled onto" his "back, legs, shoulders and head with their full bodyweight and pummeled him with fists feet and knees." *Id*. at ¶ 40. They used "various judo-type holds, and locks on [his] legs, ankles, wrists, fingers, and neck to inflict massive pain on me." *Id*. When Plaintiff admittedly did not comply with at least one of the officer's orders, Valdez ordered Baer to spray Plaintiff with pepper spray. *Id*. at ¶ 41. Baer then grabbed Plaintiff by the hair and "shoved the nozzle of his pepper spray canister into my ear and blasted my inner-ear, then shoved it in my face and blasted my face, and finally blasted me all about the head at point blank range." *Id*. At all times during these events, Plaintiff claims he remained "prone" on the ground with his hands shackled behind his back and did not "kick, spit, or, in any other way, lash out." *Id*.

Defendants' version of the events is quite different. Defendants admit Baer administered one burst of pepper spray to Plaintiff's facial area from a distance of approximately three feet. Defendant's Separate Statement of Undisputed Fact ("DSUF), Doc. 232-2, #22. Defendants maintain that Bueno never touched Plaintiff and that Defendants Baer, Valdez, Ponce, and Purvis never hit or kicked Plaintiff. DSUF ## 25-26. Defendants further state that while Defendant Lee did maintain control of Plaintiff's restraint lanyard, he did not use physical force on Plaintiff. DSUF # 27.

The F&Rs correctly explain that the mere use of pepper spray may be a reasonable alternative to escalating a physical struggle, and that a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's order. *See Danley v. Allen*, 540 F.3d 1298, 1308 (11th Cir. 2008) (reviewing cases), *overruling on other grounds recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *Clement v. Gomez*, 298 F.3d 989, 904 (9th Cir. 2002). However, it is remotely plausible that a finder of fact might believe Plaintiff's version of the events in question and might likewise conclude that, under such circumstances, the officer's conduct was "malicious or sadistic." Moreover, although proof of injury is relevant to the constitutional inquiry, such proof is not

required. *Hudson*, 503 U.S. at 7 ("The absence of serious injury is ... relevant to the Eighth Amendment inquiry, but does not end it."). Given that disputes exist as to the key, material factual issues, the Court is required to DENY both Defendants' and Plaintiff's motions for summary judgment on this claim.

B.    **First Amendment Retaliation Claim.**

Plaintiff alleges that, in retaliation for his filing of inmate grievances and civil suits, Defendants Baer, Valdez, Buenos, Lee, Ponce, and Purvis intentionally re-housed him with known rival gang members (Compl. at ¶¶ 44-47); all Defendants subjected him to the incident of excessive force described above (*id*. at ¶¶ 38-47); that subsequent to the retaliatory cell-change Defendants Baer, Valdez, and Buenos had him placed on strip cell status and deprived him of all of his property for three days (*id*. at ¶ 51); and that when his property was returned to him, it was missing a number of legal reference books, medical records, toiletries, and stamps (*id*. at ¶¶ 48-50).

"[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). The conduct identified by Plaintiff as retaliatory must have been motivated by his engagement in a protected activity. *Brodheim*, 584 F.3d at 1271-72 (memorandum drafted by warden documenting inmate's pattern of past complaints, expressing concern that other inmates were starting to file complaints involving the same allegations, and recommending transfer to another facility demonstrated that the conduct identified as retaliatory was motivated by engagement in protected activity).

As to Plaintiff's allegation that Defendants subjected Plaintiff to the use of excessive force in retaliation for his complaints about his meals, the Court agrees with the F&Rs' conclusion that Plaintiff's admitted failure to take his medication and Plaintiff's own subsequent acts set in motion the events of which he complaints. It cannot be the law that the mere existence of Plaintiff's prior

complaints would transform any and all subsequent correctional action against Plaintiff into retaliation. The fact that Plaintiff claims the officers present spoke of Plaintiff's meal complaints does not change this conclusion. Plaintiff admits he previously attempted to use refusal of medication as a mechanism to draw attention to his meal grievances. Plaintiff, not Defendants, created the connection between his <u>choice</u> to be disobedient and his protected conduct. This does not establish that Defendants' response to the disobedience was "because of" the Plaintiff's previous protected action.

It is likewise undisputed that the other actions Plaintiff complains were retaliatory – placement in a strip-cell, movement to a different cell block, and removal/loss of his personal property[1] – flowed from the correctional action triggered by Plaintiff's medication refusal. For the same reason the use of force cannot be deemed retaliatory, the subsequent, related events cannot be deemed retaliatory. Plaintiff set those events into motion through his own undisputed <u>actions</u>, actions which do not constitute protected conduct. Plaintiff cannot bootstrap every prison event into a federal case simply because he frequently exercises his First Amendment rights.

Accordingly, Defendants motion for summary judgment as to Plaintiff's First Amendment retaliation claim is GRANTED and Plaintiff's cross motion is DENIED.

C.  **Deliberate Indifference Claims.**

Plaintiff alleges that Defendants Baer, Valdez, Buenos, Lee, Ponce, and Purvis intentionally housed him with known rival gang members; placed him in a strip-cell clad only in boxer shorts, without a mattress, and without his personal property; and caused the loss of a number of items of his personal property which were missing when his property was returned to him. Compl. at ¶¶ 44-51.

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). Prison officials have a duty to take reasonable steps to

---

[1] In addition, Plaintiff cannot even identify which Defendant, if any, took his personal property. UF #41.

protect inmates from physical abuse. *Id.* at 833. To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a serious threat to the inmate's safety. *Id.* at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health . . . .'" *Id.* at 843 (citing *Helling*, 509 U.S. at 35).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Id.* at 834. Second, subjectively, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837; *accord Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (*quoting Whitley*, 475 U.S. at 319). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). The Supreme Court has stated that a remedy for unsafe conditions need not await a tragic event. Where a risk/injury has yet to occur, the plaintiff's burden would be to prove that his future health/safety is unreasonably endangered, "that it is contrary to current standards of decency for anyone to be so exposed against his will, and that prison officials are deliberately indifferent to his plight." *Helling*, 509 U.S. at 33-35.

A prison official may violate the Eighth Amendment if they are aware of a substantial danger of

9

future assault to a prisoner but fail to take reasonable ameliorative measures. *See Farmer*, 511 U.S. at 847. The magistrate judge's Screening Order, permitted Plaintiff's deliberate indifference claim to proceed against Defendants Baer, Valdez, Buenos, Lee, Ponce, and Purvis. Doc. 111 at 8. However, for purposes of summary judgment, Plaintiff has failed to meet his burden to demonstrate there are disputes of material fact as to his Eighth Amendment claim. It is undisputed that Plaintiff was never actually injured by another inmate. Plaintiff admits, in fact, that the members of the rival gang with whom he was re-housed did not threaten his safety. *See* Deposition of Barry Lamon, at 38: 1-13 (indicating that rival gang members "gave [Plaintiff] a pass" after deciding they would not "do [Plaintiff] in and be pawns for the correctional officers."). Defendants cannot be subjectively aware of a substantial danger to Plaintiff where Plaintiff admits no such substantial danger existed. *See Brooks v. Williams*, No. 2:12-CV-119 JCM CWH, 2012 WL 6645183, at 3-5 (D. Nev. Dec. 20, 2012) (granting defense summary judgment motion where plaintiff failed to present any evidence that rival gang members with whom he was housed posed him any real danger). Plaintiff has, quite literally, talked himself out of his own claim. Therefore, the court adopts the F&Rs conclusion that Defendants are entitled to summary judgment on Plaintiff's indifference re-housing claim.

The Court adopts the F&Rs conclusion that Plaintiff has failed to connect his loss of personal property claim to any cognizable deliberate indifference theory. Likewise, Plaintiff has failed to demonstrate that being placed in a strip cell, assuming such placement occurred, placed him in any substantial danger.

Accordingly, Defendants motion for summary judgment as to Plaintiff's Eighth Amendment deliberate indifference claim is GRANTED and Plaintiff's cross motion is DENIED.

## IV.  CONCLUSION AND ORDER

For the reasons set forth above and in accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), the Court finds:

(1)   Material disputes of fact exist as to Plaintiff's excessive force claim. Therefore, the Court

10

1 declines to adopt the portion of the F&Rs concerning that claim, and DENIES both Defendants' and Plaintiff's motions for summary judgment as to that claim.

   (2)   As to Plaintiff's First Amendment retaliation and Eighth Amendment deliberate indifference claim, the Court adopts the conclusions recommended in the F&Rs, and GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for summary judgment on those claims.

   The magistrate judge is directed to set dates for the pretrial conference and trial.[2]

IT IS SO ORDERED.

   Dated:   **April 10, 2015**                   /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE

---

[2] The Court is aware that Plaintiff's motions papers raise issues related to discovery. Those issues are left for resolution by the magistrate judge.